UNITED STATES of America,
Plaintiff/Appellee,

v.

John GONZALEZ, Juan C. Hinojosa, and Carl A. Carreno, Defendants/Appellants.

Nos. 92–4109, 92–4110 and 92–4111.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 4, 1993.

Decided March 23, 1994.

**1170**

Barry R. Elden, Asst. U.S. Atty., George Jackson, III, Asst. U.S. Atty. (argued), Crim. Receiving, Appellate Div., Chicago, IL, for U.S.

Kevin E. Milner (argued), Law Offices of Kevin E. Milner, Chicago, IL, for John Gonzalez.

John R. DeLeon (argued), Chicago, IL, for Juan Hinojosa.

Marvin Bloom (argued), Chicago, IL, for Carl Carreno.

Before BAUER and RIPPLE, Circuit Judges, and REYNOLDS, District Judge.*

REYNOLDS, District Judge.

On August 7, 1992, a jury convicted John Gonzalez ("Gonzalez"), Juan Hinojosa ("Hinojosa"), and Carl Carreno ("Carreno) of narcotics conspiracy and attempt to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 846. The jury also convicted Gonzalez of possession of a firearm during the commission of a drug trafficking crime in

---

* Hon. John W. Reynolds, District Judge from the Eastern District of Wisconsin, is sitting by desig-     nation.

violation of 18 U.S.C. § 924(c)(1). In this consolidated appeal, all three defendants challenge the sufficiency of the evidence supporting their convictions. We affirm the jury's verdicts.

## I. FACTUAL BACKGROUND

We begin by summarizing the relevant evidence presented by the government, because it is the sufficiency of this evidence that the appellants challenge. In March of 1992, a confidential informant contacted Illinois State Police Sergeant Frank Guerra ("Guerra") concerning Gonzalez.[1] As a result of the information Guerra received from the informant, he started a "reverse-role" narcotics investigation—so named because undercover agents would pretend to sell narcotics rather than to buy them. On April 3rd, 1992, Guerra met the informant and Gonzalez at a restaurant, as prearranged by the informant.[2] The three talked in Gonzalez' van about Gonzalez buying cocaine from Sergeant Guerra. Gonzalez told Guerra that he had one hundred thousand dollars available right away at a friend's house and that he wanted five kilograms of cocaine. Gonzalez offered to conduct the transaction at his friend's house, which, he said, was out of the way and not visible from the road. Gonzalez also told Guerra that he normally dealt with marijuana rather than cocaine and needed a place to unload a recent shipment.

After conferring with other law enforcement personnel, Guerra made three phone calls to Gonzalez that same day in order to arrange for the deal.[3] Gonzalez and Guerra agreed to meet at a K–Mart parking lot that evening. Guerra, who was bugged, brought along Officer Bautista, who posed as Guerra's drug partner and the person in possession of the cocaine. Other state police officers and DEA agents hid in plain vans in the parking lot to conduct surveillance. When Guerra and Gonzalez met, Gonzalez indicated that he believed there were officers present, and so he directed Guerra to exit the parking lot. They drove together in Guerra's car to a nearby liquor store parking lot. There, they debated how to make the exchange. Gonzalez used Sergeant Guerra's mobile phone to telephone someone named "Pete." During the phone conversation, Gonzalez and "Pete" agreed that someone would bring a truck and the money to the liquor store parking lot and give the truck key to Gonzalez. After Gonzalez hung up the phone, Sergeant Guerra pulled his car alongside Officer Bautista's, and the three men exchanged brief remarks. Bautista left the liquor store parking lot to await contact from Sergeant Guerra.

Guerra and Defendant Gonzalez drove around and then returned to the liquor store, bought beer, and headed back to Guerra's car. Defendant Carreno arrived with a bag of money in a pickup truck, followed by defendant Hinojosa in another car. Carreno, Gonzalez and Guerra debated the location of the transaction. Carreno indicated a concern over the number of police officers he believed to be present in the area. Gonzalez told Guerra he would let Hinojosa know what was going on, and then told Hinojosa that Guerra would tell his partner, Bautista, to drive his car next to Hinojosa and hand him the package. Hinojosa asked if Bautista was Mexican and then indicated where he would be parked.[4] Guerra called Bautista to tell him to deliver to Hinojosa in the liquor store parking lot. Gonzalez, Guerra and Carreno then took Guerra's car back to K–Mart, where Carreno showed the paper bag full of money. At this time, Guerra called Bautista to tell him to deliver the cocaine. The surveillance agents positioned in the two parking lots arrested the three defendant/appel-

---

1. The confidential informant did not testify at trial.

2. Guerra taped the first part of the conversation, which took place in the restaurant and continued in the parking lot and inside the informant's van. The tape ran out during the conversation in the van. The jury heard the tape and saw transcripts of the tape up to the point it ran out. Guerra testified as to the rest of the conversation.

3. He recorded these calls, and the jury heard the tapes and received copies of the transcripts.

4. A previous version of the transcript attributed the statement regarding where he would be parked to Carreno. However, Guerra had the opportunity to revise the transcript and swore that it was accurate as presented to the jury. Again, this evidence must be taken in the light most favorable to the government.

lants. They found a handgun and a small amount of cocaine on Gonzalez upon his arrest.

## II. ANALYSIS

■ On appeal, the defendants must prove that the evidence, no matter how it is weighed, could not have supported a rational jury decision finding them guilty beyond a reasonable doubt. This is a "nearly insurmountable hurdle." *United States v. Teague*, 956 F.2d 1427, 1433 (7th Cir.1992) (citations omitted); *United States v. Pritchard*, 745 F.2d 1112 (7th Cir.1984). In assessing the evidence on appeal, all reasonable inferences must be drawn in favor of the government. *United States v. James*, 923 F.2d 1261, 1267 (7th Cir.1991). Under this standard, there was more than sufficient evidence to establish the elements of the crimes for which the appellants were convicted.

### A. Gonzalez—The Entrapment Defense

■ The judge instructed the jury that they must find, beyond a reasonable doubt, that Gonzalez was not entrapped, and they did. Thus, on appeal, for Gonzalez' claim of entrapment to prevail, he must establish that there was no evidence which would support the jury's rejection of the entrapment defense.

■ Entrapment means that the government induced the defendant to commit a crime he was not pre-disposed to commit. *United States v. Franco*, 909 F.2d 1042, 1044 (7th Cir.1990). The defendant bears the burden of providing evidence of inducement, which shifts the burden to the government to prove that the defendant was predisposed to the criminal act, or that the government did not induce him to commit the crime. *Id.* Even assuming that Gonzalez presented evidence sufficient to switch the burden to the government, the evidence, when viewed in the light most favorable to the government, supports a finding that Gonzalez was not entrapped.

■ In this Circuit, five factors are relevant to determining the absence of entrapment:

(1) assessing the character or reputation of the defendant, including any prior criminal record; (2) whether the suggestion of criminal activity was made by the government; (3) whether the defendant was engaged in criminal activity for profit; (4) whether the defendant expressed reluctance to commit the offense which was overcome only be repeated government inducement or persuasion; and (5) the nature of the inducement or persuasion applied by the government.

*United States v. Perez–Leon*, 757 F.2d 866, 871 (7th Cir.1985), *cert. denied*, 474 U.S. 831, 106 S.Ct. 99, 88 L.Ed.2d 80 (1985) (citation omitted).

Gonzalez' argument on appeal rests upon the fact that his testimony that he had been entrapped by the government informant was not rebutted by the informant. He argues that because the informant did not testify and did not record conversations between the two of them before the transaction took place, he *must* have entrapped Gonzalez and did not want anyone to know about it.

First of all, a reasonable jury could have discredited Gonzalez' version of the facts entirely, and thus a rebuttal to his testimony would not be necessary. However, even if his testimony was enough to shift the burden to the government, the government *is not* obliged to put the informant on the stand in order to prove predisposition and the absence of entrapment. It could and, in the eyes of the jury, did establish predisposition and reject the entrapment defense based upon Sergeant Guerra's tapes of the transaction, testimony, and other facts adduced at trial.

As to the first factor in making such a determination—assessing the character and reputation of the defendant—although Gonzalez had no prior criminal record, he admitted to using cocaine and the police found a small amount of it in his possession when they arrested him. The jury also heard evidence that Gonzalez had dealt with large amounts of marijuana. The character of a witness on the stand is something that is within the province of the jury to determine. It had more than sufficient evidence to find

that Gonzalez was of the character of someone predisposed to commit this crime.

As to the second factor—whether the government suggested the narcotics deal—Gonzalez testified that the informant pursued him and finally persuaded him with $2,000 to enter into a cocaine deal. As the trier of fact, the jury could have either discredited Gonzalez' testimony that the government approached him first, or it could have found that the suggestion by an informant was not sufficient to prove entrapment. The government *may* solicit defendants, and therefore this second factor in analyzing the entrapment defense is not determinative. *Perez–Leon,* 757 F.2d at 872.

Evidence lines up squarely against Gonzalez on the third factor—whether he was engaged in criminal activity for profit. He admitted that money motivated him to enter into the deal and that he did not feel physically or emotionally threatened.

Gonzalez' argument rests heavily upon the fourth factor—"reluctance . . . overcome only by repeated government inducement or persuasion." He claims that he was very reluctant until only a few hours before the deal, and that any evidence of his eagerness at the time of the transaction should be ignored because he had been entrapped and convinced. Again, however, the jury could reasonably have rejected Gonzalez' testimony regarding his reluctance. Additionally, a number of factors could have led the jury to find Gonzalez predisposed to deal in drugs, including, *inter alia,* the gun, the nearly immediate availability of $100,000 in cash, his detection of surveillance in the first parking lot, and his discussions of marijuana transactions.

The fifth factor—the nature of the inducement or persuasion applied by the government—again rests upon what weight the jury gave to Gonzalez' testimony, which the jury was free to reject. In any event, the government is entitled to offer a non-extraordinary amount of money to a potential dealer without entrapping him. *United States v. Evans,* 924 F.2d 714, 717 (7th Cir.1991). The jury could quite easily have found that $2,000

was not extraordinary under the circumstances.

Gonzalez' appeal must fail.

### B. Carreno and Hinojosa

Defendants Carreno and Hinojosa also base their appeals upon challenges to the sufficiency of the evidence. They request reversals of their convictions for conspiracy to attempt to possess cocaine with the intent to distribute. They, too, fail to meet the high burden of proving that the evidence did not support their convictions.

It is sufficient to prove conspiracy that the parties involved knowingly embrace the same criminal objectives. *United States v. McNeese,* 901 F.2d 585, 600 (7th Cir.1990). The government may prove conspiracy by circumstantial evidence and reasonable inferences. *United States v. Briscoe,* 896 F.2d 1476, 1505–06 (7th Cir.1990), *cert. denied,* 498 U.S. 863, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). A single act is enough if it is intended to advance the conspiracy. Carreno testified at trial that a person he was working with paid him $5,000 to deliver a truck and a bag full of cash to a parking lot, and that he did not know this would further an illegal venture. He thus claimed that he did not embrace a criminal objective. The jury could rationally have rejected his testimony as incredible and based their convictions on the government's evidence. For instance, Carreno was paid $5000.00 to be at the right place at the right time. He expressed concern about the location of the deal and the presence of police and he never questioned the purpose of his or anyone else's actions. Viewed in the light most favorable to the government, this evidence supports the jury conviction.

The government presented less evidence against Hinojosa, who was supposed to accept delivery of the cocaine, but it still offered enough to support a conviction. For example, Gonzalez told Carreno to tell Hinojosa what was going on. Gonzalez told Hinojosa that Guerra's "buddy" (Officer Bautista) was driving a black Camaro. Hinojosa asked whether the buddy was Mexican. When Gonzalez told Hinojosa that Bautista was to

hand him a package, Hinojosa verbally and physically indicated where he would be parked.

These two defendants argue that they were both "merely present." However, a jury could rationally have rejected this defense and convicted them based upon evidence of their acts and statements. Their appeals must fail.

## III.  CONCLUSION

The decision of the district court is therefore AFFIRMED.