**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Floyd Elodius COTTON, Sr.,**
**Defendant–Appellee.**

No. 96–1242.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 27, 1996.

Decided Nov. 15, 1996.

Stephen B. Clark (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellant.

Andrea L. Smith (argued), Office of the Federal Public Defender, East St. Louis, IL, for Defendant–Appellee.

Before CUMMINGS, EASTERBROOK, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

This is yet another case raising questions in the wake of the Supreme Court's 1995 decision in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472. Our opinion today will make clear that *Bailey* has no effect on a portion of 18 U.S.C. § 924(c)(1), the statute that penalizes using or carrying a firearm during and in relation to a drug trafficking crime.

Today's case takes us to Venice, Illinois, where police officers Derek Wise and Rodney Davis received a radio dispatch stating that an anonymous caller reported someone selling drugs on a corner known to be a high volume, drug trafficking location. Floyd Cotton, who matched the description of the person described by the caller, was at the corner when the officers arrived to check out the dispatch.

Wise approached Cotton and asked for identification. Wise thought Cotton was acting uneasy and fidgety. He also thought Cotton was reaching into his right front pocket in a threatening manner. Officer Wise ordered Cotton to remove his hand from the pocket and, after Cotton complied, a pat-down search was performed. During the pat-down, Wise found a fully loaded Beretta pistol protruding from Cotton's pants pocket. The officers arrested Cotton and continued to search him, finding crack cocaine in a plastic tube and a plastic baggie containing "gank," a form of fake crack. Cotton later said he usually made gank with pizza dough (sometimes even with a hint of crack) and that he added "Ora–Jel," which has a bitter taste that fools customers.

After his arrest Cotton signed a statement admitting he possessed the crack, gank, and gun. He was indicted several months later for possession of crack with intent to distribute and using and carrying a firearm during and in relation to a drug trafficking crime, the latter in violation of 18 U.S.C. § 924(c)(1). Cotton pled guilty to the drug count but went to trial on the firearm charge.

Cotton's jury trial on the firearm charge began on November 27, 1995. At trial, Officers Wise and Davis testified to the events of October 12, 1994, the day Cotton was arrested. The government also produced an expert who said the tube found on Cotton contained 0.9 grams of crack and the baggie consisted of 1.0 gram of a material (the gank) containing trace elements of cocaine. An agent from the Bureau of Alcohol, Tobacco and Firearms testified that he test-fired the gun and found that it worked. He also said drug dealers often carry firearms to protect themselves, their drugs, and their profits, and that gank sellers, particularly, carry firearms to protect themselves against customers who have been cheated.

Cotton took the stand in his own defense and stipulated to pleading guilty to the cocaine charge, stating that although he just found the crack, he did intend to sell it. Cotton also testified that his recent batch of gank, a portion of which he had with him when he was arrested, contained some crack. He acknowledged selling gank on other occasions, but he said his possession of the gun on the day he was arrested had nothing to do with selling gank or crack. He testified he possessed the gun for a reason that is not prohibited by § 924(c)(1)—he said he had it for protection because three local men with reputations for violence thought Cotton had broken into one of their homes and stolen

their marijuana. At trial, he said that shortly before he acquired the gun, a week or so before his arrest, the local bad guys assaulted, threatened, and abducted him at gunpoint. After obtaining the gun, he carried it to protect himself against those men. Cotton also said he lied to the police when he told them he "bought it (the gun) off the street" because he really got it from his friend's 14-year-old brother who was too young to have it.

To get the law before the jury, the government proposed a jury instruction (No. 25) based on the law prior to the Supreme Court's decision in *Bailey*. The instruction read:

> A firearm is used or carried during and in relation to a drug-trafficking crime if the circumstances of the case show that the firearm facilitated or had a role in the crime by providing a person with the security and confidence to undertake a transaction or series of transactions involving illegal drugs. "Using" a firearm includes the possession of a firearm which in any manner facilitates the crime.

Cotton's attorney, Andrea Smith, who was commendably up-to-date in her research, objected to the instruction and urged the judge to give a different one she proposed based on the dissent in the District of Columbia Circuit's opinion in the *Bailey* case. *See United States v. Bailey*, 36 F.3d 106 (D.C.Cir.1994). After the trial judge pointed out his concern with using language from a dissent, Ms. Smith argued that the Supreme Court had granted certiorari on the issue of whether possession of a weapon could equal use under § 924(c). The judge refused to give Cotton's proposed instruction and instead chose to give instruction No. 25 as offered by the government.

During deliberations, the jury sent the judge a question about instruction No. 25. The question read, in pertinent part:

> We are having difficulty understanding "in relation to" as to the crime committed. Could this be explained to the jury? We

have read the written statement and need further clarification.

The judge answered that he could not give further instructions.

On November 30 the jury found Cotton guilty on the firearm charge. A week later, on December 6, 1995, the Supreme Court decided *Bailey*, which reversed the decision of the District of Columbia Circuit Court. The next day, the ever-alert Ms. Smith filed a motion for a new trial based on the fact that Cotton's jury was given a bum instruction. After a hearing, the court granted the motion for a new trial. The government appeals that order.

■ Appellate review of a trial judge's decision on a motion for a new trial is generally deferential, except when it presents a pure issue of law. *United States v. Boyd*, 55 F.3d 239, 242 (7th Cir.1995).

> If the judge in the course of his analysis has occasion to resolve a pure issue of law, our review of that resolution is plenary. But the other judgments that the district judge makes ... are to be reviewed deferentially. This is not only the rule; it is the dictate of common sense....

*Id.* at 242 (citation omitted). The *Boyd* court stated that deference is especially important where the decision rests on an error's effect on the jury and the district court judge observed the witnesses, observed the jurors as they listened to the witnesses, and developed a feel for the impact of the case on the jury. *Id.*

■ Although the district judge here pointed to four factual determinations when deciding to grant Cotton a new trial,[1] we believe the heart of this matter is really an issue of law, and for that reason we give his legal determination plenary review.

In *Bailey*, the Supreme Court determined that mere possession of a firearm does not constitute "use" under § 924(c)(1). There is no question that after *Bailey*, instruction No. 25 was an incorrect statement of the law. In a recent case, *United States v. Robinson*, 96

---

1. The judge noted that (1) Cotton had in fact requested a correct instruction, (2) the jury communications indicated that it was having problems with the questioned instruction, (3) even with perfect instructions it would have been a close case, and (4) it was impossible to determine whether the wrong instruction tipped the scales in favor of conviction.

F.3d 246 (7th Cir.1996), we reversed a conviction and remanded for a new trial based on a three-paragraph jury instruction that included, word-for-word, the instruction given in this case. The instructions were "clearly improper under the dictates of *Bailey*." *Robinson*, 96 F.3d at 250.

But the fact that the instruction was wrong under *Bailey* does not mean that a new trial must be granted. Section 924(c)(1) punishes a defendant who "during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm." The hang-up in *Bailey* was the definition of "use" and the distinction between that term and the terms "carry," which appears in the statute, and "possess," which doesn't. The Supreme Court determined that "use" requires evidence sufficient to show an active employment of the firearm by the defendant, i.e., the weapon is an operative factor in the drug offense. The Court pointed out that prior to its decision, the definition of "use" for purposes of § 924(c)(1) had swallowed up the term "carry" and had improperly included mere possession of a weapon. Post–*Bailey*, mere possession or placement of a gun to provide a sense of security or otherwise to facilitate a drug offense does not constitute "use."

In our case, the indictment charged Cotton with both use and carriage of a firearm, and Cotton conceded he was carrying the gun while possessing drugs he was ready, willing, and able to sell. The evidence at trial was uncontroverted on this point. Cotton's argument to the jury was not that he did not meet the carry prong of § 924(c)(1), but instead that he did not carry the weapon "in relation to" his drug crime. This was the issue clearly presented to the jury, as evidenced by this series of questions Ms. Smith put to Cotton:

Q. Let me ask you again, Floyd, and look the jurors in the eye and tell them did you carry that gun or did you have that gun in relation to any drug crime you were doing?

A. No.

Q. Why did you have that gun, and why were you carrying it?

A. I had it for my protection.

Q. Why?

A. Because I thought some dudes were out to kill me.

While discussing the elements of the offense in his closing argument, the government's attorney, Stephen Clark, said: "Number one, that the defendant used or carried a firearm.... And, number two, that it was during and in relation to the drug trafficking crime."[2] In her closing argument, attorney Smith admitted that the first element was met. She focused the jury's attention on the second element:

Now, as Mr. Clark said, we've already agreed that Floyd had the gun. There's no doubt about it. He admitted to it. We've stipulated that. He had the gun that day. So we know the government has proved the first element. But the second element goes to in relation to a drug trafficking crime....

. . . .

... Now, the issue is did he have that gun on that date to help him with his drug trafficking crime? Did he have that gun that day in relation to the drug trafficking crime? Did he have that gun that day in connection with the drug trafficking crime? Did it help him commit that drug trafficking crime? ...

. . . .

... Mere possession of a gun is not enough.... He's got to have the gun in relation. It's got to facilitate his crime.... It's got to be in relation to the drug crime.

The jury's question during deliberations suggests that it honed right in on the "in relation to" part of the statute.

In *Smith v. United States*, 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993), the Supreme Court explained that "in relation to" means that "the gun at least must 'facili-

---

**2.** The district court later instructed the jury on the statutory definition of § 924(c) and again set forth the two elements of the charge: "First, that the defendant did use or carry a firearm; and, second, that he did so during and in relation to a drug trafficking crime, that crime being possession with intent to distribute cocaine base, crack, as charged in count one."

tat[e], or ha[ve] the potential of facilitating,' the drug trafficking offense." *Smith,* 508 U.S. at 238, 113 S.Ct. at 2059 (quoting *United States v. Stewart,* 779 F.2d 538, 540 (9th Cir.1985)); *United States v. Taylor,* 31 F.3d 459, 465 (7th Cir.1994). This explanation of the "in relation to" element is valid precedent, unaffected by *Bailey. See Bailey,* ⸺ U.S. at ⸺, 116 S.Ct. at 508 *(Bailey* not inconsistent with *Smith); see also United States v. Loaiza–Diaz,* 96 F.3d 1335, 1336–37 (9th Cir.1996) (after *Bailey, Stewart* still valid precedent to the extent it explained how "carrying" a firearm may be "in relation to" a drug trafficking crime). Although *Bailey* changed how courts define "use," the Supreme Court left its interpretation of the remainder of § 924(c)(1), including the interpretation of the word "carry" and the "in relation to" requirement, untouched. *United States v. Caldwell,* 97 F.3d 1063, 1069–70 (8th Cir.1996) *(Bailey* left the carry prong of § 924(c)(1) intact, as well as pre-*Bailey* cases analyzing the carry prong).

The Supreme Court has recognized that when there is instructional error with respect to the elements of the offense, there is no need to retry the defendant if the facts the jury necessarily found established guilt beyond a reasonable doubt. *Pope v. Illinois,* 481 U.S. 497, 503, 107 S.Ct. 1918, 1922, 95 L.Ed.2d 439 (1987); *United States v. Holmes,* 93 F.3d 289, 293 (7th Cir.1996). The improper instruction in this case fails in its description of "use," but the language of both the indictment and the verdict was in the conjunctive, and the jury clearly found that Cotton *carried* the firearm. *See United States v. Durman,* 30 F.3d 803, 810 (7th Cir.1994) (general rule is that when a jury returns a guilty verdict on an indictment charging acts in the conjunctive, the verdict stands if the evidence is sufficient with respect to any of the acts charged), *cert. denied,* ⸺ U.S. ⸺, 115 S.Ct. 921, 130 L.Ed.2d 801 S.Ct. 921 (1995). When the only evidence upon which a now-infirm "use" charge was predicated necessarily satisfied the definition of "carry," we have affirmed § 924(c) convictions. *See United States v. Gonzalez,* 93 F.3d 311, 321 (7th Cir.1996). Here, the jury clearly found against Cotton on his real defense—that he did not carry the

gun "in relation to" his drug offense. To return its verdict of guilty, the jury necessarily accepted the evidence suggesting that Cotton carried the gun *in relation to the drug crime* over evidence that he did not. In regard to the words "in relation to," the questioned jury instruction did not mislead— it correctly referred to facilitation of the drug trafficking crime.

New trials are proper under *Bailey* when instructions give juries an incorrect definition of "use" and they may have relied on the misinformation. That is not what happened here. The jury did not have to concern itself with "use" at all. Instead, with "carry" being admitted, the fight was only over the "in relation to" phrase. Because the evidence undisputedly shows that Cotton was carrying the gun when the officers stopped him, and the jury's determination that Cotton had the gun in relation to the drug crime does not fall within *Bailey*'s scope, the instructional error was harmless.

Our decision today is in harmony with other decisions that relate to *Bailey*'s effect on § 924(c) convictions. In *Robinson,* for instance, we clarified the framework for the now-common *Bailey* appeals regarding improper jury instructions: (1) if all the evidence presented qualifies as either active-employment "use" or "carry," the court will affirm a conviction despite the bad instruction, (2) if none of the evidence presented qualifies as either active-employment "use" or "carry," the court will reverse the conviction outright, and (3) if some of the evidence presented could qualify as either active-employment "use" or as "carry," but other evidence presented points to mere possession or some other type of now-defunct, inactive "use," the court will reverse the conviction and remand for a new trial, since one cannot be sure whether the jury convicted on the proper or improper basis. *Robinson,* 96 F.3d at 250. Cotton's case falls under the first scenario-the evidence presented qualifies as active "carry" evidence, with no conflicting evidence on the point. In *United States v. Baker,* 78 F.3d 1241 (7th Cir.1996), we affirmed a conviction based on the "carry" prong of § 924(c)(1), despite an improper pre-*Bailey* jury instruction, because the de-

fendant had a gun under the seat in his car within easy reach and a properly instructed jury would have had to conclude that he was carrying the gun within the meaning of § 924(c)(1). Cotton's situation is worse because he actually had the gun on his person while he was walking around with the drugs on the corner.

Even though Cotton's counsel astutely objected to the instruction in this case before *Bailey* was decided by the Supreme Court and the district court judge agreed to grant a new trial due to the improper instruction, we cannot overlook the fact that Cotton's defense turned on a part of the firearm statute that *Bailey* did not alter. Therefore, the decision that Cotton deserved a new trial based on *Bailey* was an incorrect determination of law, which we must reverse. The verdict of the jury must be reinstated.

REVERSED.