John **GONZALEZ**, Petitioner,

v.

**UNITED STATES of America,** Respondent.

Civil No. 96 C 8104. Criminal No. 92 CR 251–1.

United States District Court, N.D. Illinois, Eastern Division.

June 11, 1997.

der the contingency portion of the contingency fee agreement voidable.

John Gonzalez, Milan, MI, pro se.

George Jackson, Asst. U.S. Atty., U.S. Attorneys Office, Chicago, IL, for Respondent.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This matter is before the Court on Petitioner John Gonzalez' motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. The motion is denied.

### I. BACKGROUND

In April of 1992, Petitioner John Gonzalez was indicted along with Juan Hinojosa and Carl Carreno for narcotics conspiracy and attempting to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 846. Gonzalez was also indicted for using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

In August of 1992, a jury found Gonzalez guilty of the drug-related crimes and the firearm-related crime.

The U.S. Court of Appeals for the Seventh Circuit affirmed Gonzalez' conviction. *United ed States v. Gonzalez,* 19 F.3d 1169 (7th Cir.1994).

Gonzalez collaterally attacks, pursuant to 28 U.S.C. § 2255, several aspects of his conviction and sentence.

### II. SECTION 2255

Relief under § 2255 "is reserved for extraordinary situations." *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir.1996). Indeed, a criminal defendant may attack the validity of his sentence under § 2255 only if:

the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. Importantly, however, "[a] § 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir.1995). This means that:

> [a]n issue not raised on direct appeal is barred from collateral review absent a showing of both good *cause* for the failure to raise the claims on direct appeal and actual *prejudice* from the failure to raise those claims, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice.

*Prewitt*, 83 F.3d at 816.

With these principles in mind, the court will address each of Gonzalez' arguments.

## III. DISCUSSION

■ Gonzalez offers several arguments attacking the convictions. He failed to raise the arguments on appeal, however. Gonzalez was represented by different counsel at each stage of the criminal proceeding—trial, sentencing, and appeal. Because Gonzalez is claiming that all three of his attorneys performed ineffectively, the court will address the arguments on their merits since ineffective assistance of counsel can qualify as cause for failing to raise an issue on appeal. *See Guinan v. United States*, 6 F.3d 468, 471 (7th

Cir.1993). Each argument will be addressed in turn.

### A. Bailey v. United States

■ First, Gonzalez argues that the conviction under § 924(c)(1) for using or carrying a firearm during and in relation to the drug-related crimes is inconsistent with the Supreme Court's decision in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

The Court disagrees.

■ Section 924(c)(1) criminalizes the conduct of one who *either* (1) uses *or* (2) carries a firearm during and in relation to a drug trafficking crime. Until the *Bailey* decision, the Seventh Circuit defined the term "use" —the first of the two prongs under which a § 924(c)(1) conviction may be based—rather broadly. *Bailey* changed that, however. Indeed, *Bailey* significantly narrowed the scope of the "use" prong by interpreting "use" to mean the "active employment" of the firearm.[1] *Bailey*, —— U.S. at ——, 116 S.Ct. at 506. Importantly, however, the *Bailey* decision had no impact on § 924(c)(1)'s "carry" prong—the second prong under which a conviction may be based. *See United States v. Booker*, 73 F.3d 706, 709 (7th Cir.1996) ("The Supreme Court noted that its holding does not limit the 'carry' prong of § 924(c).").

It is true as Gonzalez argues that the jury sitting in his case was improperly instructed—as a result of Bailey—regarding the § 924(c)(1) charge.[2] "But the fact that the

---

1. *Bailey* did not become the law of the land until well after Gonzalez' conviction was affirmed on appeal. For the purposes of this opinion, the Court will presume that *Bailey* applies retroactively to issues raised in § 2255 motions. *See Magnuson v. United States*, 861 F.2d 166 (7th Cir.1988) (applying retroactively to a § 2255 motion the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which narrowed the scope of 18 U.S.C. § 1341—mail fraud).

   Moreover, since *Bailey* changed the law of the Seventh Circuit and was rendered after his trial and appeal, Gonzalez has not procedurally defaulted for his obvious failure to raise the issue on appeal. The emergence of new retroactive law will generally qualify as cause sufficient to disregard the technical procedural default. *See*

*Van Daalwyk v. United States*, 21 F.3d 179, 182 n. 7 (7th Cir.1994).

2. The jury was instructed that:

   > to sustain the charge of using or carrying a firearm during and in relation to a drug trafficking crime, it is not necessary for the government to prove that defendant John Gonzalez fired, brandished or otherwise displayed a firearm. So long as the defendant knowingly possessed the firearm during the course of the offense charged in count one or count two to facilitate, or with any potential to facilitate, the commission of the offense, then you may find that the defendant used or carried the firearm in relation to that offense.

instruction was wrong under *Bailey* does not mean that a new trial must be granted." *United States v. Cotton,* 101 F.3d 52, 55 (7th Cir.1996). Although the instruction may be inconsistent with *Bailey* with respect to the "use" prong, the conviction may still be upheld under the "carry" prong.

To determine if the conviction can be maintained under the "carry" prong, the court must first check the indictment to see if the defendant was indicted for "carrying" the firearm during and in relation to the drug trafficking crime. *See Cotton,* 101 F.3d at 55. Here, Gonzalez was indicted under both of § 924(c)(1)'s prongs—(1) use and (2) carry. Thus, the grand jury authorized the Government to prosecute Gonzalez for either (1) using or (2) carrying the firearm.

Next, the court must look at the evidence presented at trial. If the facts that the jury necessarily found to support the § 924(c)(1) conviction establish beyond a reasonable doubt that Gonzalez *"carried"* the firearm, the conviction stands. *See Cotton,* 101 F.3d at 56. Here, all of the evidence at trial established that Gonzalez "carried" the firearm, thus, whether Gonzalez "used" the weapon is irrelevant.[3]

Upon Gonzalez' arrest immediately after attempting to purchase the drugs, a handgun was found on his person. *See United States v. Gonzalez,* 19 F.3d 1169, 1172 (7th Cir.1994) (The surveillance agents "found a handgun . . . on Gonzalez upon his arrest."). Indeed, at trial Gonzalez admitted that he "carried" the firearm, but suggested that he did so for protection.[4] *See* Transcript pgs. 413–14. Accordingly, Gonzalez' § 924(c)(1) conviction is *not* inconsistent with *Bailey* since all of the evidence established that he "carried" the firearm rather than "used" the firearm.

**B.  *Lawful Possession of the Firearm***

■  Next, Gonzalez argues that as a result of the Seventh Circuit's decision—rendered after Gonzalez' appeal—in *United States v. Taylor,* 31 F.3d 459 (7th Cir.1994), he was entitled to a jury instruction that lawful possession of the firearm is a defense to a § 924(c)(1) charge.

*The Court disagrees.*

■  Simply stated, Gonzalez seriously misreads the *Taylor* decision. Not only does *Taylor* not stand for the proposition that legally possessing a firearm is a defense to a § 924(c)(1) charge, the court is not aware of any such case law. The issue is whether the firearm was used or carried "during and in relation to" a drug trafficking crime. 18 U.S.C. § 924(c)(1). Thus, it appears that Gonzalez' real argument is that the firearm was not used "in relation to" the drug trafficking crime.[5] That argument is also a loser.

■  The phrase "in relation to" is expansive. *Smith v. United States,* 508 U.S. 223, 236, 113 S.Ct. 2050, 2058, 124 L.Ed.2d 138 (1993). At a minimum, "the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence cannot be the result of accident or coincidence." *Id.* at 238, 113 S.Ct. at 2059. The gun "must facilitate or have the potential for facilitating the drug trafficking offense." *Id.* In the ordinary case, the gun facilitates the offense by providing a means of protection. *See id.*

Gonzalez argues that he carried the firearm for protection because he lived in a dangerous neighborhood. Thus, the fact that he carried it *during the drug offense was merely coincidental* since he frequently carried the firearm for protection. That may be Gonzalez' interpretation of the evidence, but not the one the jury had to believe.

Here, Gonzalez' firearm was fully loaded and concealed from others, immediately

---

3.  The jury was instructed that Gonzalez could be convicted under § 924(c)(1) for "carrying" the firearm. *See* jury instructions # 28 and # 29.

4.  In fact, in Gonzalez' brief supporting his § 2255 motion he concedes that he "carried" the weapon. *See* brief pg. 73 ("[T]he jury is in effect emphatically was told that [the defendant] was a bad and dangerous person by his very nature, *i.e.,* carrying of a firearm."). As will be discussed, he argues that he should not have been convicted under § 924(c)(1) because he *carried* the firearm for a lawful purpose.

5.  Gonzalez does not argue that the firearm was not carried "during" the drug trafficking crime.

available to him and only him in the event of "trouble." Thus, certainly the jury could have inferred that the concealed firearm emboldened Gonzalez during the offense, *i.e.*, he used it for security and protection. *See Taylor*, 31 F.3d at 466–67 ("[T]he concealed possession of a loaded weapon could also serve to embolden its owner."). The jury was not required to believe Gonzalez' interpretation of the evidence that the firearm's presence during the offense was merely coincidental.[6]

## C.  *Buyer–Seller Instruction*

██ Next, Gonzalez argues that counsel performed ineffectively for failing to offer a buyer-seller jury instruction consistent with the Seventh Circuit's *en banc* decision in *United States v. Lechuga*, 994 F.2d 346 (7th Cir.1993), regarding the drug conspiracy conviction.

The Court disagrees.

Gonzalez was part of a "reverse role" narcotics investigation—undercover agents pretended to sell drugs rather than buy them. *Gonzalez*, 19 F.3d at 1171. In April of 1992, an agent met with an informant and Gonzalez. *Id.* The three discussed Gonzalez buying cocaine from the agent. *Id.* Gonzalez told the agent that he had $100,000 available at a friend's house. *Id.* The deal was set.

At the exchange point, Gonzalez used a mobile phone and contacted an individual named "Pete." *Id.* Pete said that he would send someone with a truck and money to pick up the drugs. *Id.* Carreno arrived in a pickup truck with the money, followed by Hinojosa in a car. *Id.* Carreno, Gonzalez, and the agent debated where the transaction would take place. *Id.* They agreed on a location. The agent told his partner—another agent—to deliver the drugs to Hinojosa in a liquor store parking lot. *Id.* Gonzalez, Carreno, and the agent took the agent's car to another parking lot where Carreno showed the agent a bag of money. *Id.* The agent called his partner and told him to deliver the drugs. *Id.* Gonzalez, Carreno,

and Hinojosa were arrested shortly thereafter. *Id.*

The buyer-seller instruction is essentially a defense to the conspiracy charge. *See United States v. Turner*, 93 F.3d 276, 285 (7th Cir.1996). Gonzalez is arguing that he was not part of Carreno and Hinojosa's conspiracy to distribute the cocaine; rather, his only role in the ordeal was to bring the buyer (Carreno and Hinojosa) and the seller (the undercover agent) together, *i.e.*, he acted as a broker. Thus, he should not have been indicted or convicted for conspiring to distribute the drugs. He claims, relying on the principle espoused in *Lechuga*, that his counsel performed ineffectively for failing to submit a jury instruction on his theory of defense.

Gonzalez is misreading *Lechuga.* "*Lechuga* held that mere evidence of one sale of narcotics, without more, was inadequate to support a conviction of the *buyer and seller* for conspiracy to distribute narcotics." *United States v. Baskin–Bey*, 45 F.3d 200, 205 (7th Cir.1995) (emphasis added). This means that Gonzalez' attempted purchase (with Carreno and Hinojosa) from the undercover agent in and of itself cannot constitute a conspiracy between the undercover agent and Gonzalez, Carreno, and Hinojosa. *See United States v. Garcia*, 89 F.3d 362, 365 (7th Cir.1996). In other words, because Gonzalez, Carreno, and Hinojosa "were on the same side of the transaction, *Lechuga* is completely inapplicable." *Baskin–Bey*, 45 F.3d at 205; *accord, United States v. Herrera*, 54 F.3d 348, 354 (7th Cir.1995) ("In the present case, all of the Defendants are on one side of the cocaine deal—the buying side. * * * Therefore, because the Defendants were on the same side of the relevant transaction, *Lechuga* is inapplicable."). Accordingly, Gonzalez' argument based on the principle espoused in *Lechuga* is without merit.

Gonzalez may be arguing that he was part of a conspiracy to purchase the drugs, but he was not part of Carreno and Hinojosa's conspiracy to distribute them. If so, the jury

---

**6.**  Gonzalez argues that the jury should have been instructed as to the definition of "in relation to." But the jury was instructed that the firearm had to be knowingly possessed to facilitate or poten-

tially facilitate the commission of the drug offense in order to convict under § 924(c)(1). *See* jury instruction # 29.

instructions adequately covered that issue. The jury was instructed on the law of conspiracy and they were instructed—to convict under count II—that they had to find that Gonzalez possessed "cocaine with the intent to distribute it." Government Instruction # 26. Thus, the jury found that Gonzalez intended to distribute the drugs.[7]

### D. *Sentencing*

■■■■ Next Gonzalez argues that counsel was ineffective for failing to argue that the two-level enhancement, pursuant to U.S.S.G. § 3B1.1(c), for being a leader, organizer, manager, or supervisor was not supported by the facts. The court has a couple of problems with Gonzalez' position.

First, assuming Gonzalez is correct and the facts did not support a § 3B1.1(c) enhancement and his sentencing and appellate counsel were ineffective for failing to raise the issue, it appears that the issue is not cognizable in a § 2255 motion in the Seventh Circuit. Beginning with *Scott v. United States*, 997 F.2d 340 (7th Cir.1993), the Seventh Circuit began to question whether any errors under the sentencing guidelines were cognizable in a § 2255 motion. Although not answering the question in *Scott*, the court noted that only "extraordinary circumstances" even call for an inquiry into the issue. *Id.* at 343.

In *Durrive v. United States*, 4 F.3d 548 (7th Cir.1993), the circuit court elaborated further. The court held that to be cognizable in a § 2255 motion a person complaining about his sentence must demonstrate that counsel's deficient performance led to a "significant" increase in the sentence. *Id.* at 551. Of course, the next question is what is a "significant" increase in one's sentence?

But first, let's review Gonzalez' situation. Gonzalez had a criminal history of I and an offense level of 34, resulting in a guideline imprisonment range of 151 to 188 months of imprisonment. He is complaining about a two-level increase. Assuming that he is correct and the two points should not have been added to his total offense level, he would

have an offense level of 32, producing a guideline imprisonment range of 121 to 151 months of imprisonment. He was sentenced to 151 months of imprisonment—the low end of the applicable 151 to 188 month range. Assuming that he would have been sentenced at the low end of the "new" range, his sentence would be 121 months of imprisonment. Thus, assuming that his counsel performed deficiently, he was sentenced to an extra 30 months of imprisonment. Is an extra 30 months in prison a "significant" increase in one's sentence?

In *Durrive* the court held that 12 months was not "significant" and suggested that 22 months would not be "significant." *See Durrive*, 4 F.3d at 551 ("But the difference between 120 months and 108 or even 98 . . . is not . . . a 'significant' difference."). In *Martin v. United States*, 109 F.3d 1177 (7th Cir.1996), the court held that 16 months was not "significant." But what about 30 months?

There is a critical aspect of *Durrive* and *Martin* that the court has yet to discuss and appears dispositive of Gonzalez' argument. Up to now, the court discussed "significant" increases to one's sentence with respect to the increase in the number of *months* of incarceration as a result of the alleged error. Although increased months in prison is the practical effect of the errors, that's not really what the cases held. Indeed, they analyzed whether the difference between sentences qualified as "significant" with respect to the increase in *offense levels*, not *months*, that the alleged error produced. Both cases found that "the sort of increase produced by a few levels' difference in sentencing calculations" does not lead to a "significant" increase in one's sentence. *See Martin*, 109 F.3d at 1178 (discussing *Durrive* ).

As noted, Gonzalez—just like *Durrive* and *Martin*—complains about a two-level difference, *i.e.*, a "few levels' difference." Such an argument is barred from review by way of a § 2255 motion pursuant to the holdings in *Durrive* and *Martin*. Accordingly, assuming

---

7. Keep in mind, Gonzalez is not arguing that his trial counsel failed to present particular evidence in his defense.

Gonzalez is correct and his counsels' deficient performance resulted in an increase in his sentence, § 2255 provides no avenue for relief.

 Even if Gonzalez could get around the holdings in *Durrive* and *Martin,* however, the court would still find that his position is without merit. As Gonzalez acknowledges, the "primary concern of § 3B1.1 is the imposition of a punishment commensurate with the defendant's relative responsibility within a criminal organization." *United States v. Johnson–Dix,* 54 F.3d 1295, 1309 (7th Cir.1995). When analyzing a defendant's relative responsibility, the Seventh Circuit has placed "particular emphasis on whether the defendant exercised control over other participants in criminal activity." *Id.* But, if the defendant "coordinated and organized the criminal activity even if he did not necessarily control another participant," the § 3B1.1(c) enhancement is appropriate. Id.

Here, Gonzalez was clearly more culpable than his co-conspirators Carreno and Hinojosa. Indeed, Gonzalez organized the deal. Gonzalez established the meeting point with the undercover agent. *See Gonzalez,* 19 F.3d at 1171. When they first met, Gonzalez expressed concern that police officers were present, so he suggested another place to conduct the transaction. *Id.* He telephoned "Pete" and they agreed that someone would bring a truck and give the truck key to Gonzalez. *Id.* Carreno and Hinojosa then showed up to conduct the transaction. *Id.* Gonzalez orchestrated the entire deal; thus, the enhancement was appropriate.

### E. *The Confidential Informant*

A confidential informant notified the undercover agent about Gonzalez. The confidential informant did not testify at trial. Gonzalez believes the testimony of the confidential informant may be relevant to the defense of entrapment that he raised at trial and to the fact that he did not enter the conspiracy to distribute the drugs with Carreno and Hinojosa. He argues that counsel was ineffective for failing to subpoena the informant.

However, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit." *United States v. Ashimi,* 932 F.2d 643, 650 (7th Cir.1991). "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *Id.* Here, Gonzalez' argument that the informant's testimony would have benefitted his case is nothing more than speculation.

### IV. *CONCLUSION*

Petitioner John Gonzalez' motion under 28 U.S.C. § 2255 to vacate, set aside or correct the sentence is DENIED.