Buford Dale FAIR, Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 97–5876.

United States Court of Appeals,
Sixth Circuit.

Submitted Aug. 5, 1998.

Decided Sept. 9, 1998.

**428**

Fred E. Peters (briefed), Lexington, Kentucky, for Petitioner–Appellant.

James E. Arehart (briefed), Office of the U.S. Attorney, Lexington, Kentucky, for Respondent–Appellee.

Before: KRUPANSKY, NORRIS, and SILER, Circuit Judges.

## OPINION

KRUPANSKY, Circuit Judge.

The petitioner-appellant, Buford Dale Fair ("Fair"), has moved under 28 U.S.C.A. § 2255 [1] to vacate, set aside, or correct his sentence imposed following his May 12, 1988 jury conviction for one count of using and carrying firearms "during and in relation to" the commission of a drug trafficking offense.[2] On August 8, 1998, the district court condemned Fair pursuant to 18 U.S.C.A. § 924(c) [3] to 60 months in the federal correctional system for this offense, to run consecutively to his conspiracy and aiding and abetting distribution sentences. On December 16, 1996, Fair complained, via section 2255 motion, that insufficient trial evidence supported his section 924(c) conviction in light of *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), and that the trial court's section 924(c) jury charge erroneously stated the pertinent law as defined by *Bailey* and thus unconstitutionally deprived him of a fair trial. Fair now chal-

---

1. That measure provides, in pertinent portion:

   A prisoner in federal custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court ... to vacate, set aside or correct the sentence.

   \* \* \* \* \* \*

   If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

2. The jury also convicted Fair of one count of conspiracy to distribute and to possess with intent to distribute approximately one kilogram of cocaine, plus three counts of aiding and abetting his co-defendant Thomas Robert Moser ("Moser") in the unlawful distribution of cocaine, for which he incurred four concurrent terms of 108 months of imprisonment. The instant petition did not implicate those convictions and sentences.

3. Section 924(c) postulates, in pertinent part:

   Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years[.]

   18 U.S.C.A. § 924(c)(1).

lenges the district court's rejection of his section 2255 petition.

Previously, Fair and Moser had directly appealed their convictions and sentences on several theories not germane to the petition *sub judice.* The Sixth Circuit, in affirming their convictions and sentences, concluded that the evidence, when viewed most favorably for the prosecution, proved that Fair and Moser had completed three illegal cocaine sales to undercover law enforcement officers between January 7 and March 10, 1988. Regarding the final transaction, the Sixth Circuit pronounced:

> The third and final transaction took place on March 10, 1988. [Investigators] Dailey and Probst, as well as Dave Mirus, another undercover state detective, accompanied Moser to the Fair residence. Fair gave the men instructions to meet him later at a roadside rest [area] a short distance from his home. When Fair appeared, Moser walked over to Fair's vehicle, obtained a package [which contained cocaine], and returned to the agents' vehicle. Moser and Fair were then arrested. *Fair was found to be carrying a semiautomatic handgun, and a revolver was found on the floorboard of Fair's vehicle.*

*United States v. Moser and Fair,* 870 F.2d 658, 1989 WL 25800 at *1 (6th Cir. March 20, 1989) (per curiam) (emphasis added), *cert. denied,* 491 U.S. 909, 109 S.Ct. 3196, 105 L.Ed.2d 704 (1989).

The trial testimony of arresting officer Russ Sparks, and undercover detective James Dailey, evidenced that, on March 10, 1988, immediately following the cocaine transfer, Officer Sparks seized a loaded 9 mm. semi-automatic handgun from inside the front of Fair's trousers, and surfaced a loaded .38 caliber revolver lying in plain view on the floor board between the front driver and passenger seats of Fair's truck. Only Fair

had occupied that vehicle throughout the subject transaction.

Prior to *Bailey,* the Sixth Circuit had not precisely differentiated between the "uses" and "carries" language of section 924(c); it had broadly deemed a firearm "used" or "carried" for section 924(c) purposes "if a firearm merely 'embolden[ed]' the defendant or otherwise serve[d] to facilitate an offense, even if the weapon was not displayed or discharged." *United States v. Warner,* 10 F.3d 1236, 1239 (6th Cir.1993), *cert. denied,* 511 U.S. 1147, 114 S.Ct. 2176, 128 L.Ed.2d 896 (1994) (*citing United States v. Morrow,* 977 F.2d 222, 231 (6th Cir.1992) (en banc), *cert. denied,* 508 U.S. 975, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993)). Its broad interpretation of § 924(c) explained that a firearm was "used" or "carried" during and in relation to a controlled substance infraction in any circumstances "where drug traffickers ha[d] ready access to weapons with which they secure[d] or enforce[d] their transactions." *United States v. Acosta–Cazares,* 878 F.2d 945, 952 (6th Cir.1989), *cert. denied,* 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989). However, on December 6, 1995, the Supreme Court decided in *Bailey,* 516 U.S. at 143, 116 S.Ct. 501, that the "use" of a firearm during and in relation to a narcotics trafficking crime "requires evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense."[4] (Emphasis in original).

Subsequently, on December 16, 1996, Fair instigated the subject section 2255 petition, asserting that his imprisonment for violation of section 924(c) was illegal because the trial evidence did not satisfy the *Bailey* definition of "use" of a firearm "in relation to" a drug trafficking crime, and because the trial court's jury instruction concerning the application of section 924(c) was defective.[5] The

---

**4.** "Active employment" of a firearm may be achieved by "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire" that weapon. *Bailey,* 516 U.S. at 138, 116 S.Ct. 501.

**5.** This petition comprised Fair's second application for collateral sentencing relief under section 2255. In his first petition, initiated on March 5,

1990, Fair assaulted the trial court's delegation of certain proceedings to a magistrate judge, and impugned the effectiveness of his trial counsel. The lower court rejected that application on February 19, 1991, which judgment the Sixth Circuit affirmed on August 14, 1991. *Fair v. United States,* 941 F.2d 1209, 1991 WL 158770 (6th Cir. Aug.14, 1991) (per curiam).

district court rejected the appellant's proffered arguments on June 9, 1997. On June 30, 1997, the district court granted Fair a certificate of appealability under 28 U.S.C.A. § 2253(c) "on the issue of whether he is entitled to relief from his 1988 sentence for the violation of 28 [sic—18] U.S.C. § 924(c) in light of the United States Supreme Court's holding in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)." J.A. at 48.

■■■ The Sixth Circuit reviews *de novo* district court rulings on habeas corpus petitions, although associated findings of historical fact are generally reviewed for clear error. *Cardinal v. United States,* 954 F.2d 359, 362 (6th Cir.1992). On collateral review, a trial error is deemed harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady,* 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (note omitted). "To prevail under 28 U.S.C. § 2255, a defendant must show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States,* 21 F.3d 107, 109 (6th Cir.1994) (citation omitted). When the section 2255 petitioner has procedurally defaulted his contentions by failing to assert them on direct appeal or via a previously litigated habeas application, he must further either prove (1) that he possessed good cause for failing to do so[6] and would suffer actual prejudice if his averments are deemed precluded, or (2) that he is actually innocent of the subject offense. *Bousley v. United States,* — U.S. —, —, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998); *Floyd v. Alexander,* 148 F.3d 615, 617–18 (6th Cir. 1998); Rules Governing § 2255 Cases, Rule 9(b), 28 U.S.C.A. foll. § 2255.

■■■ *Bailey* claims may be asserted retroactively by means of motions under section 2255. *In re Hanserd,* 123 F.3d 922, 926 (6th Cir.1997). Fair has correctly argued that his March 10, 1988 conduct did not comprise "use" of a firearm under section 924(c) as construed by *Bailey.* However, count 5 of the indictment charged Fair with *both* "using" and "carrying" a firearm in violation of 18 U.S.C. § 924(c). Where both "using" and "carrying" have been charged, evidence sufficient to support either element will sustain a section 924(c) conviction. *United States v. Mauldin,* 109 F.3d 1159, 1161 (6th Cir.1997); *United States v. Riascos–Suarez,* 73 F.3d 616, 623–24 (6th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996). The undisputed trial evidence proved that Fair had carried a loaded firearm on his person during the March 10, 1988 offense, and simultaneously carried a second loaded handgun in the passenger compartment of his vehicle within easy reach, which patently proved the offense of "carrying" firearms during the unlawful distribution of a controlled substance. *See Muscarello v. United States,* — U.S. —, — – —, 118 S.Ct. 1911, 1918–20, 141 L.Ed.2d 111 (1998) (explaining that the term "carries" a firearm, as used in section 924(c), has a broad meaning which includes not only the carriage of a firearm on the person of an offender during a drug crime but also includes the carriage of a firearm in the locked glove compartment or trunk of an automobile used to deliver narcotics).

■■■ The petitioner has theorized that, although he carried the subject weapons "during" the narcotics offense of March 10, 1988, the prosecution failed to prove that he carried either weapon "in relation to" that underlying transaction, because purportedly no evidence directly linked his possession of the subject weapons to the commission of the predicate drug distribution crime. Fair has alleged that he always carried a firearm, in accordance with an alleged common practice and custom in the pertinent region (a rural

---

**6.** Fair's direct appeal, initiated in 1988, was finalized by the Supreme Court's denial of certiorari in 1989. His initial § 2255 motion, made in 1990, was rejected on appeal in 1991. The Supreme Court decided *Bailey* in 1995. Thus, Fair could not have advanced his *Bailey* claim on direct appeal or upon his prior collateral attack.

area of Eastern Kentucky).[7] However, on the instant record, the inference was inescapable that Fair carried the subject weapons on March 10, 1988 "in relation to" the cocaine sale. After passing the contraband to his accomplice Moser, Fair remained at the scene, with the apparent purpose of ensuring that the transfer was completed without incident. Moreover, the record reflected that Moser, who carried no weapons during the sale, had previously warned one of the undercover buyers that Fair was not afraid to use his guns, clearly implying that Fair would enforce the deal with violence if necessary. *See United States v. Russell*, 76 F.3d 808, 810–12 (6th Cir.1996) (affirming a jury's conclusion that a gun carried by an uniformed but off-duty drug dealing rogue police officer during a narcotics sale was carried "in relation to" the drug crime), *cert. denied*, — U.S. ——, 117 S.Ct. 121, 136 L.Ed.2d 72 (1996).

The Court in *Muscarello* in essence directed that a person who knowingly "carries" (whether on his person or in his vehicle) a

handgun to an illegal drug sale has carried that weapon "in relation to" that predicate narcotics felony; thus whether the perpetrator habitually totes a pistol is an immaterial issue. In *Muscarello*, the Court observed that Congress intended section 924(c) "to persuade the man who is tempted to commit a Federal felony to leave his gun at home." — U.S. at ——, 118 S.Ct. at 1916 (*quoting* 114 Cong. Rec. 22231) (1968) (statement of Rep. Poff, the bill's chief legislative sponsor).[8] *See also Smith v. United States*, 508 U.S. 223, 240, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (describing section 924(c) as designed to combat the "dangerous combination" of "drugs and guns.") Thus, the trial evidence supported Fair's conviction beyond a reasonable doubt for "carrying" a firearm "during and in relation to" a federal narcotics transgression.

Next, Fair has charged that the district court's jury instruction regarding section 924(c) was erroneous under *Bailey* and thus deprived him of due process.[9] "In

7. As evidentiary support for the claim that he had been accustomed to carrying a firearm at all times, Fair cited only the trial testimony of Detective James Dailey, which reflected that Moser had advised Dailey on March 9, 1988 (the day prior to the subject cocaine transfer and subsequent arrest of the petitioner) that "Fair always carries a gun with him." However, the overall evidence tended to prove that, if Fair always carried a firearm, he did so at least in part because he was a professional cocaine dealer. In any event, Fair has proffered no evidentiary support for the existence of any local practice or custom of carrying a firearm at all times.

8. The *Muscarello* Court also quoted additional passages from the legislative history to section 924(c) which evinced a Congressional intent to punish those who voluntarily elect to appear at an illegal narcotics transaction while armed. *Id.* at 1916–17.

9. The trial judge issued the following juror charge:

Count 5 charges the defendants, aided and abetted by each other, with using or carrying two firearms during and in relation to the drug trafficking offenses listed in Counts 1 and 4.
Title 18, United States Code, Section 924(c)(1), (2) reads in pertinent part that:
"Whoever, during and in relation to any drug trafficking crime for which he may be prosecuted in a court of the United States uses or carries a firearm"

shall be guilty of an offense against the United States.
The essential elements of Section 924(c)(1), (2), which the United States must prove beyond a reasonable doubt, are:
(1) That the defendant committed a drug trafficking crime in violation of Federal law; and
(2) That during or in relation to such crime, the defendant used or carried a firearm.
Under Count 5, it is only necessary that the United States prove the use or carrying of one (1) firearm.
The term "drug trafficking crime" means any felony violation of Federal law involving the distribution of a controlled substance.
You are instructed that conspiracy to distribute cocaine, and the possession of cocaine with the intent to distribute it, are felony violations of Federal law involving the distribution of a controlled substance for which a person may be prosecuted in a Court of the United States. The crimes listed in Counts 1 and 4 are, therefore, drug trafficking crimes within the meaning of the statute.
Before you can find a defendant guilty under Count 5, you must first determine whether the particular defendant named in those counts committed either the offense charged in Count 1 or the offense charged in Count 4.
Under Count 5, it is not necessary for the United States to prove that a defendant actually displayed or discharged a firearm. It is required, however, that the United States

order to obtain collateral relief for errors in a jury charge, a prisoner must show not merely that the instruction was erroneous, but that 'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Rattigan v. United States,* 151 F.3d 551, 555–56 (6th Cir.1998) (*quoting United States v. Frady,* 456 U.S. 152, 169, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). A jury instruction which the defendant did not challenge at trial is reviewed for plain error, and such error will be found only if, when read as a whole and in conjunction with other material charges, it substantially misled the jurors. *United States v. Taylor,* 102 F.3d 767, 769–70 (6th Cir.1996) (per curiam), *cert. denied,* —— U.S. ——, 118 S.Ct. 327, 139 L.Ed.2d 254 (1997). Even a plainly erroneous instruction under the "use" component of section 924(c), as limited by *Bailey,* did not cause prejudice to the defendant if the trial evidence supported his conviction under the "carrying" prong. *Id.* at 771. *See also Rattigan,* 151 F.3d at 555–56 (mandating that a section 924(c) conviction must be sustained if a jury, on the record evidence, would be compelled to convict upon a proper post-*Bailey* instruction).

This reviewing court need not parse the language of the subject jury instruction for post-*Bailey* inaccuracies because the trial evidence unequivocally supported, beyond a reasonable doubt, Fair's conviction for "carrying" a firearm "during and in relation to" the March 10, 1988 narcotics infraction, as evolved herein. Hence, a properly instructed, post-*Bailey* jury would have been compelled to convict Fair. The petitioner has thus suffered no actual prejudice by the assaulted charge.

Accordingly, the lower court's denial of Fair's section 2255 request to vacate, set aside, or correct his sentence imposed under 18 U.S.C.A. § 924(c) is **AFFIRMED**.

prove that the defendant had a firearm within his possession or control, and that such possession or control gave the defendant the opportunity or ability to display or discharge the firearm, either to protect himself or to harm or intimidate another person. J.A. at 51–52. (Ellipses and citation omitted).