Ralph NAPIER, Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 96–6098.

United States Court of Appeals,
Sixth Circuit.

Submitted Feb. 4, 1998.

Decided Nov. 4, 1998.

Fred E. Peters (briefed), Lexington, KY, for Petitioner–Appellant.

Frances E. Catron, Asst. U.S. Attorney (briefed), Office of U.S. Attorney, Lexington, KY, for Respondent–Appellee.

Before: MARTIN, Chief Judge; NORRIS and CLAY, Circuit Judges.

## OPINION

BOYCE F. MARTIN, JR., Chief Judge.

Ralph Napier is before this Court on a motion to vacate filed under 28 U.S.C. § 2255. Napier has challenged the five-year sentence he received under 18 U.S.C. § 924(c) for using or carrying a firearm during the commission of a drug trafficking crime. Napier argues that his sentence should be vacated in light of the Supreme Court's decision in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). In *Bailey,* the Court clarified the definition of the "use" prong of § 924(c), and Napier contends that under the clarified definition he cannot be considered to have "used" his firearm. Napier also contends that his jury instructions are fatally flawed given *Bailey*'s intervening clarification of the law.

Napier's claims fail. There was sufficient evidence to convict Napier under the "carry" prong of § 924(c), and he was not prejudiced by the errors in his jury instructions. We therefore AFFIRM the district court's decision.

## I.

Napier was arrested on November 19, 1990, when he attempted to sell seventeen pounds of marijuana to Kentucky State Police Detective Rodney Ballard. Detective Ballard had arranged to purchase the drugs in a series of tape-recorded telephone conversations with Napier, and Napier agreed to sell Detective Ballard thirty pounds of marijuana. Detective Ballard met Napier in a shopping center parking lot in Jackson, Kentucky, but Napier had not brought the marijuana with him. Napier therefore went to Charles Grannis Spencer's house to pick up the marijuana. Napier asked Spencer to return to the shopping center with him. Spencer testified at his and Napier's trial that he did not want to accompany Napier, and that he agreed only after Napier promised him a steak dinner.

When they arrived back at the shopping center, Napier was in the passenger seat and Spencer was in the rear seat on the passenger side. Charlotte Terry, whom Napier described as a "roady," was driving the car. Napier got out of the car to talk to Detective Ballard and opened the rear passenger door to show him the seventeen pounds of marijuana, not the thirty Napier had offered, on the floor of the car. Detective Ballard and Napier then moved the marijuana to the trunk to continue the inspection.

At that time, other law enforcement officers moved in to arrest Napier, Spencer, and Terry. Valerie Park, a special agent with the Bureau of Alcohol, Tobacco and Firearms, testified that when Spencer stepped out of the car, "someone shouted, 'He's got a gun.' At the same time I observed a gun in his right rear pants pocket. I removed the gun at the time." The gun was a .38 caliber Smith & Wesson revolver loaded with four rounds of ammunition, and Spencer was carrying two rounds of ammunition in his pock-

et. Spencer testified that the gun was his brother's and that he had not intended to bring the gun with him. "I said, 'I will ride over there with you,'" Spencer testified. "[A]nd I was going to put the gun up under the register. [Napier] said, 'I would just stick that in your pocket, brother we are not going to be but a minute. You can stay in the car, we will get something to eat.'" Spencer denied that he was riding along as an enforcer or that he had been paid to accompany Napier.

Napier was indicted by a Pikeville, Kentucky, federal grand jury on December 6 and charged with aiding and abetting and conspiring in an attempt to possess and distribute seventeen pounds of marijuana in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2, Count One; possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1), Count Two; and using and carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), Count Three. According to Count Three, Napier "during and in relation to the drug trafficking crime set out in Count 1 of this indictment, did knowingly and unlawfully use and carry a firearm, that is a .38 caliber Smith & Wesson revolver; all in violation of Title 18, United States Code, Section 924(c)(1)." Napier's case went to a jury. The jury instructions on the § 924(c) violation stated, in relevant part:

Count 3 of the indictment charges that the defendants, Ralph Napier and Charles Grannis Spencer, on or about November 19, 1990, did use a firearm, to wit, a Smith and Wesson .38 caliber revolver, during and in relation to a drug trafficking crime, for which he could be prosecuted in a court of law.... Section 924, provides in pertinent part: First, that the defendant committed a drug trafficking crime for which he might be prosecuted in a United States Court; second, that during or in relation to such crime, the defendant knowingly used or carried a firearm.... The law recognizes two kinds of possession—actual pos-

session and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession. A person who, although not in actual possession knowingly has both the power and intention, at a given time, to exercise dominion and control over a thing, either directly or through another person or persons, is then in constructive possession of it. A defendant is considered to have used a firearm if its presence in his possession in any manner facilitated the carrying out of the offense. It is not necessary that the firearm be fired, in order that it may be considered as having been used. Now, to establish the second element, the government must prove beyond a reasonable doubt that the firearm had some relation to or some connection to the underlying offense. It is not necessary for the United States to prove that the defendant actually displayed or discharged the firearm. It is required, however, that the United States prove that the defendant had a firearm within his possession or control, and that such possession or control gave the defendant the opportunity or ability to display or discharge the firearm, either to protect himself or to harm or intimidate another person. .

On Feb. 15, 1991, the jury returned guilty verdicts on all three counts. Napier was sentenced to two years and eight months imprisonment on Counts One and Two [1] and five years on Count Three, with the sentences to run consecutively.[2] Napier appealed, arguing that parts of his conviction were duplicitous and that there was insufficient evidence to convict him of violating § 924(c). This Court affirmed the district court. *United States v. Spencer,* 956 F.2d 271, Nos. 91–5539, 91–5541, 1992 WL 36903 (6th Cir. Feb.27, 1992) (unpublished per curiam).

Napier then brought a motion to vacate under 28 U.S.C. § 2255, contending that his counsel was ineffective. The district court

---

**1.** Napier's two-year, eight-month sentence also covered a guilty plea from another case.

**2.** Napier was released from federal prison in August of 1997. The district court had jurisdiction, however, because Napier filed his motion to vacate while he was still incarcerated. *See* 16 Fed. Proc., L.Ed. § 41:15 (1983).

denied his motion on March 16, 1993, and the Sixth Circuit affirmed. *Napier v. United States*, 9 F.3d 108, No. 93–5412, 1993 WL 406795 (6th Cir. Oct.8, 1993) (unpublished order). Napier brought the present § 2255 motion on June 6, 1996. The district court denied Napier's motion on July 12, and Napier filed a timely appeal on August 9. This Court denied Napier a certificate of appealability on March 26, 1997, but subsequently granted a certificate of appealability on September 12.

## II.

■ This is Napier's second § 2255 motion, and the filing of successive motions is generally prohibited by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996). The Sixth Circuit, however, allows a prisoner to file a second § 2255 motion without fulfilling the requirements for such a motion under the Act if the first § 2255 motion preceded the effective date of the Act. *See In re Hanserd*, 123 F.3d 922, 934 (6th Cir.1997). The Act took effect on April 24, 1996. Napier filed his first motion to vacate prior to the effective date of the Act, and his second motion to vacate on June 6. Napier, therefore, need not show that his second motion is based on newly discovered exculpatory evidence or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(1)(2).[3]

■ This Court has appellate jurisdiction under 28 U.S.C. § 1291 and, pursuant to a certificate of appealability issued by this Court on September 12, 1997, under 28 U.S.C. § 2253(c)(2). "A reviewing court is obliged to review *de novo* denials of 28 U.S.C. § 2255 petitions, while examining the district court's factual findings for clear error." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir.1994) (internal citation omitted). When a defendant fails to object to a jury instruction at trial or on direct review and

makes the objection on collateral review, as Napier has done, "a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 167, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Defendant can also raise his claim on collateral attack if he can show his actual innocence. *See In re Hanserd*, 123 F.3d at 926.

Napier makes both the actual innocence and the cause and prejudice claims. He argues that in light of *Bailey*'s clarification of § 924(c) he is actually innocent and has not violated the law. For the reasons discussed below, this argument fails. He also claims that his now-erroneous jury instructions have caused him actual prejudice and that he had cause for not protesting the instructions at an earlier stage in the proceedings. This argument also fails.

## A.

■ In order to show that he was actually innocent of violating § 924(c), Napier would have to show that he was neither "using" nor "carrying" a firearm. "Using" and "carrying" must be viewed through the lenses of *Bailey* and *Muscarello v. United States*, —— U.S. ——, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). In *Bailey*, the Supreme Court concentrated on the "use" prong of § 924(c), but did not change the parameters of the "carry" prong. *See United States v. Myers*, 102 F.3d 227, 236 (6th Cir.1996) (noting that Bailey "left open" definition of "carry"), *cert. denied*, —— U.S. ——, 117 S.Ct. 1720, 137 L.Ed.2d 843 (1997). According to the Court in *Bailey*, "[t]o sustain a conviction under the 'use' prong of § 924(c)(1), the Government must show that the defendant actively employed the firearm during and in relation to the predicate crime." 516 U.S. at 150, 116 S.Ct. 1035. "The active-employment understanding of 'use' certainly includes brandishing, displaying, bartering, striking with, and

---

3. The exception recognized by *In re Hanserd* is relevant to Napier because otherwise he could not meet the requirements for filing a second § 2255 motion. Napier has not presented any newly discovered exculpatory evidence, and "al-

though the opinion may have constitutional dimensions, *Bailey* did not announce a new rule of constitutional law." *In re Hanserd*, 123 F.3d at 929 (footnote omitted).

most obviously, firing or attempting to fire, a firearm." *Id.* at 148, 116 S.Ct. 1035. The gun was jammed in Spencer's back pocket and was not visible until he exited the car. Neither Spencer nor Napier can be considered to have "used" the gun under the *Bailey* definition.

Napier was also indicted and convicted under the "carry" prong of § 924(c), however, and there the story becomes more complicated. This case involves three questions on the "carry" issue: one, whether Napier could be considered to have "carried" constructively under § 924(c); two, whether Napier could be liable as an aider and abetter or conspirator under § 924(c) for someone else who was "carrying" a gun; and three, whether Napier was "carrying" the gun because it was in the vehicle with him. An affirmative answer to any of these questions would be sufficient to sustain his conviction.

Napier's comrade, Spencer, had the gun in his pocket, and this falls under "carry." *See Muscarello,* 118 S.Ct. at 1915 ("No one doubts that one who bears arms on his person 'carries a weapon.'"). Was, however, Napier constructively "carrying" or in constructive possession of Spencer's gun? On Napier's direct appeal, this Court characterized Napier's § 924(c) conviction as based on constructive possession: "Viewing all of the evidence in a light most favorable to the prosecution, we find that a trier of fact could find, beyond a reasonable doubt, that Napier had constructive possession of Spencer's weapon." *Spencer,* 1992 WL 36903 at *2. It is not clear whether a theory of constructive possession survives *Bailey.* Although *Bailey* speaks little to the "carry" prong of § 924(c), it does reject the "fortress theory." *See United States v. Anderson,* 89 F.3d 1306, 1315 (6th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 786, 136 L.Ed.2d 728 (1997). The fortress theory of "use" is one type of constructive possession. *United States v. Bingham,* 81 F.3d 617, 623–24 (6th Cir.1996) ("[T]he 'fortress theory' ... supports a conviction for using or carrying a firearm in relation to a drug trafficking offense if it reasonably appears that the firearms found on the premises controlled or owned by a defendant are in his actual or constructive

possession, are to be used to protect the drugs, or otherwise facilitate a drug transaction." (internal citations and quotation marks omitted)), *cert. denied,* — U.S. —, 117 S.Ct. 250, 136 L.Ed.2d 177 (1996). We need not determine the continuing viability of a constructive possession theory post-*Bailey,* however, because Napier's conviction can stand under another theory of "carrying."

■ The Government argues that Napier is liable as a conspirator and aider and abettor. Aiding and abetting can be dealt with easily. Although this Court recognizes aiding and abetting in the § 924(c) context, *see United States v. Lowery,* 60 F.3d 1199, 1202 (6th Cir.1995), the jury was not charged on this issue so we will not consider it as a basis for Napier's conviction. The Sixth Circuit also recognizes co-conspirator liability in the context of § 924(c). *See United States v. Lloyd,* 10 F.3d 1197, 1211 (6th Cir.1993) ("[T]his court has extended the *Pinkerton* doctrine to encompass coconspirator liability under 924(c)(1)." (internal footnote omitted)). *Bailey* did not affect the doctrine of conspirator liability for § 924(c). *See Myers,* 102 F.3d at 238 (noting that § 924(c) *Pinkerton* liability not affected by *Bailey* ), *cert. denied,* — U.S. —, 117 S.Ct. 1720, 137 L.Ed.2d 843 (1997). Napier, however, claims that there was insufficient evidence on which to base a conviction. Napier challenged the sufficiency of the evidence of "carry" on his direct appeal, *see Spencer,* 1992 WL 36903 at *2, but arguably he did not challenge the sufficiency of evidence on conspiracy to "carry." Because he did not raise the issue on direct appeal, he must show cause and prejudice. *See Frady,* 456 U.S. at 167–68, 102 S.Ct. 1584; *Ratliff v. United States,* 999 F.2d 1023, 1025 (6th Cir.1993). Napier does not have cause for failing to raise the issue on direct appeal because *Bailey* has not affected the law on conspiracy. His conspiracy charge is sufficient to maintain his conviction.

Although it is not necessary to maintain Napier's conviction, we will discuss *Muscarello* briefly. Under a broad reading of *Muscarello,* Napier would be guilty of "carrying." According to the Court in *Muscarello,* "the 'generally accepted contemporary meaning' of the word 'carry' includes the carrying of a

firearm in a vehicle." 118 S.Ct. at 1919. Napier was in the car with the gun. The Court also noted, however, that " '[c]arry' implies personal agency and some degree of possession." *Id.* at 1917. It is not clear from the record whether Napier exercised the requisite amount of agency and had sufficient possession to be liable under *Muscarello.* There is no need to answer those questions, however, because Napier's conviction can be maintained on the basis of the conspiracy charge.

### B.

Napier went through a trial, direct appeal, and a previous § 2255 motion without challenging his jury instructions. Because Napier did not object to his jury instructions on direct review and is objecting on collateral review, he must show cause why he did not previously object and "actual prejudice" resulting from the error. *Frady,* 456 U.S. at 167–68, 102 S.Ct. 1584. *See also Williams v. United States,* 98 F.3d 1052, 1054 (8th Cir. 1996) (applying *Frady* standard of review in post-*Bailey,* § 2255 scenario), *cert. denied,* —— U.S. ——, 117 S.Ct. 1327, 137 L.Ed.2d 488; *Velasquez v. United States,* 131 F.3d 766, 767 (8th Cir.1997) (same).[4]

▮ Napier can show cause for his tardy challenge. Napier argues that, after *Bailey,* his jury instructions were incorrect. Although the Government does not contest the issue of cause—it mistakenly argues that the jury instructions should be reviewed under the plain error standard instead of the cause and prejudice standard—the recent Supreme Court case of *Bousley v. United States,* —— U.S. ——, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), brings the cause issue into question. In *Bousley,* the Court held that cause did not exist for challenging a pre-*Bailey* § 924(c) guilty plea. *Bousley,* however, was limited to collateral attacks on guilty pleas. *See Bousley,* 118 S.Ct. at 1608–09 (noting that certiorari was granted "to resolve a split among the Circuits over the permissibility of post-*Bailey* collateral attacks on § 924(c)(1)

convictions obtained pursuant to guilty pleas"); *Hilliard v. United States,* 157 F.3d 444, 450 n.4 (6th Cir.1998) ("*Bousley* was limited to the issue before the Court—guilty pleas."); *but see United States v. Ramos,* 147 F.3d 281, 287 (3d Cir.1998) (extending *Bousley* to collateral attacks on jury instructions); *United States v. Sorrells,* 145 F.3d 744, 750 n. 4 (5th Cir.1998) (same). Napier's belated objection to the jury instructions is understandable in light of the intervening decision in *Bailey.* *See Hilliard,* 157 F.3d at 450(post-*Bousley* case noting that "Hilliard can show sufficient cause for his belated objection" when pre-*Bailey* jury instructions were erroneous); *Fair v. United States,* 157 F.3d 427, 1998 WL 567881 at *2 n. 6 (6th Cir. Sept.9, 1998) (post-*Bousley* case noting that Fair initiated direct appeal in 1988 and § 2255 motion in 1990 and that Supreme Court decided *Bailey* in 1995 and "[t]hus, Fair could not have advanced his *Bailey* claim on direct appeal or upon his prior collateral attack"); *Rattigan v. United States,* 151 F.3d 551, 555 (6th Cir. Aug.4, 1998) (finding that cause existed for post-*Bousley* challenge of pre-*Bailey* instructions); *Napier v. United States,* 1998 WL 466560 at *1 (6th Cir. July 31, 1998) (post-*Bousley* case involving pre-*Bailey* instructions in which "[c]ause exists because Napier's § 924(c) claim relies on a significant, intervening change in the law") (unpublished order); *Anderson,* 89 F.3d at 1315 ("Defendant's failure to object to the jury instructions was understandable given this Circuit's pre-*Bailey* approval of the facilitation or fortress theory of use.").

▮ Having shown cause, Napier must then show that he has been actually prejudiced by the erroneous jury instructions. The actual prejudice standard used on collateral review is more difficult for the movant to meet than is the plain error standard of Fed.R.Crim.P. 52(b), which is used on direct appeal. *See Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *Frady,* 456 U.S. at 166, 102 S.Ct. 1584 (noting that "to obtain collateral relief a

---

4. Post-*Bailey* Sixth Circuit cases challenging pre-*Bailey,* § 924(c) jury instructions have tended to come on direct appeal as opposed to collateral review. *See, e.g., United States v. Mauldin,* 109 F.3d 1159 (6th Cir.1997); *United States v. Anderson,* 89 F.3d 1306 (6th Cir.1996); *United States v. Moore,* 76 F.3d 111 (6th Cir.1996).

prisoner must clear a significantly higher hurdle than would exist on direct appeal"). The standard for actual prejudice is " 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.' " *Kibbe*, 431 U.S. at 154, 97 S.Ct. 1730 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). The defendant "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170, 102 S.Ct. 1584 (emphasis in original).

Napier alleges several errors in his jury instructions. Napier notes that the language was inaccurate on the question of "use." Napier also points out that "the instruction fails to address the 'carry' prong of the statute." He is correct in noting the inaccuracies in the "use" instruction, but "carry" was mentioned in the instructions, and errors in his instructions do not rise to the level of actual prejudice.

In Napier's jury instructions on the § 924(c) charge, the district court used a form of the word "carry" in reference to a firearm only once. The instructions instead focused on the word "use," or, more confusingly, "possession." In noting that "[a] defendant is considered to have used a firearm if its presence in his possession in any manner facilitated the carrying out of the offense," the district court undoubtedly gave a broader definition of "use" than the active employment standard of *Bailey*. See *Anderson*, 89 F.3d at 1315. The "use" instruction was therefore incorrect, and the "carry" instruction did not extend beyond the recitation of the basic elements of a § 924(c) violation.

Although the jury instruction on "carry" is a slender reed on which to hang a conviction, it is sufficient to forestall a finding of actual prejudice. *United States v. Mauldin* involved a similar post-*Bailey* challenge to jury instructions. The Court noted that the government conceded that the jury instruction was erroneous "for it merely utilized 'use' and 'carry' as self-defining terms" but found

that "a properly instructed jury would have found Mauldin guilty of 'carrying' the firearm." *Mauldin*, 109 F.3d at 1161. Similarly, in Napier's trial "carry" was presented as a self-defining term. Granted, the instruction on "use" was incorrect, and there was a confusing discussion of possession. Nonetheless, a properly instructed jury could have found Napier guilty of "carrying" a firearm. See *Fair*, 157 F.3d at 430–31 ("Where both 'using' and 'carrying' have been charged, evidence sufficient to support either element will sustain a section 924(c) conviction."). "Carry" was mentioned in the jury instructions, and the evidence was sufficient to support a jury conviction. Napier suffered no prejudice.

Napier also argues that the jury's instruction was insufficient under *Bailey* on the "in relation to" element of § 924(c). Napier contends that the jury instructions merely equate "in relation to" with possession. First, Napier's argument that *Bailey* has somehow changed the ground rules for "in relation to" fails. See *United States v. Covert*, 117 F.3d 940, 949 (6th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 204, 139 L.Ed.2d 140 (1997) (noting that "the Court's holding in *Bailey* did not affect the Court's previous definition of 'in relation to' "); *see also Broadway v. United States*, 104 F.3d 901, 903–04 (7th Cir.1997) ("Both arguments (insufficiency of evidence and flawed jury instructions) center around the words 'in relation to' in § 924(c)(1). Both have nothing to do with Bailey, which left 'the interpretation of . . . the "in relation to" requirement[ ] untouched.' " (quoting *United States v. Cotton*, 101 F.3d 52, 56 (7th Cir.1996))). Napier did not raise the "in relation to" issue on direct appeal. Because Bailey has not clarified the definition of "in relation to," Napier cannot show cause for his belated protest. Napier's "in relation to" argument is fatally deficient.

### III.

The decision of the district court is AFFIRMED.