UNITED STATES of America,
Plaintiff–Appellee,

v.

Raymond DOUTHIT, Defendant–
Appellant.

No. 01–3779.

United States Court of Appeals,
Sixth Circuit.

June 25, 2003.

Before MARTIN, Chief Circuit Judge, KRUPANSKY and COLE, Circuit Judges.

PER CURIAM.

This case arises from Douthit's conviction by jury on three counts: conspiracy to possess more than five hundred grams of cocaine and more than fifty grams of cocaine base with the intent to distribute, knowing possession of over fifty grams of cocaine base with the intent to distribute, and knowingly traveling in interstate commerce with the intent to engage in illegal

activity. Douthit claims the evidence was insufficient to support his convictions. He further claims that he was deprived of a fair trial by the admission of "bad acts" evidence and improper hearsay evidence and that he was denied effective assistance of counsel. For the following reasons, we REVERSE and REMAND in part and AFFIRM in part the decision of the district court.

On September 13, 2000, Drug Enforcement Agent Brian Stine received a phone call from a confidential informant, who advised Stine that two individuals were traveling together by bus back to Cincinnati from New York, carrying drugs with them. The informant identified the individuals as Starrett Palmer and the defendant, Raymond Douthit. With the information from the informant, Stine and other agents were able to pinpoint the specific bus and its arrival time.

The much-delayed bus was due into Cincinnati at 5:55 a.m. on September 14, 2000. Stine and other agents deployed around the bus station. When the bus arrived, Stine identified Palmer disembarking the bus. While Palmer stood in the line exiting the bus, he had a brief conversation with a man in a black shirt, whom agents later identified as Douthit. After they were completely off the bus, Douthit stayed with Palmer until Palmer collected his bag from checked luggage. While observing the two men, Agent Stine noticed bulges under Palmer's shirt.

Douthit and Palmer separated and began walking toward the exit of the building. The men were about twenty feet apart, and they neither stopped nor spoke to anyone. They were both apprehended shortly after exiting the building. Each man claimed he was traveling alone. Douthit consented to a search of his bag and person, but the officers did not discover any contraband. Officers patting Palmer down in a weapons search discovered a

body-band device containing 693.4 grams of cocaine base. Later fingerprint analysis of the belt did not produce any of Douthit's prints.

Palmer entered a guilty plea with the government in return for his testimony against Douthit. Palmer asserts that he was a "mule" for carrying drugs for Douthit on several occasions, including this one. He testified that the two would travel to New York, typically by bus. Douthit carried a large amount of cash in his backpack. Once there, they would purchase large amounts of crack cocaine. Palmer claims the sellers would pack the belt and put it on his body for him. Palmer and Douthit would then travel back to Cincinnati. On the return trip, it was their practice to have no contact whatsoever. This protected the buyer from liability should the "mule" somehow be caught with the drugs.

This was not a typical trip, however, because the pair encountered two very long delays in their return trip. They ended up in Pittsburgh for a delay, and Palmer requested and arranged meal vouchers for the pair and two other similarly-situated passengers. The vouchers showed that Douthit used his own name in signing for the food. Douthit and Palmer talked to each other throughout this return trip, only distancing themselves from one another at the bus station in Cincinnati.

Palmer further testified that Douthit was a regular supplier of crack for Palmer. Palmer kept Douthit's numbers handy on a planner, which was introduced into evidence. Palmer's planner included some friends and family, but it mainly listed dealers and fellow users, who would often convene at Palmer's for business transactions.

Subsequent surveillance and search warrants for Douthit's residence eventually led to his arrest. Agents discovered a small amount of marijuana, a small amount of

cocaine base, and precision scales in Douthit's residence. With all of this evidence together, the government charged Douthit with the three counts listed above.

Douthit alleges in this appeal that the evidence was insufficient to support the charges against him, that he was prejudiced by the erroneous admission of evidence against him, and that he received ineffective assistance of counsel. We take each of these claims in turn.

The district court's denial of a motion for judgment of acquittal is the basis for the challenge on appeal as to the sufficiency of the evidence. This court reviews that denial *de novo,* although "we must affirm [the district court's] decision if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *United States v. Canan,* 48 F.3d 954, 962 (6th Cir.1995). This court explained the standard of review more fully: "In addressing the sufficiency of the evidence adduced at trial to support the convictions . . ., we do not weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. M/G Transport Services, Inc.,* 173 F.3d 584, 588–89 (6th Cir.1999). This court went on to say, citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in *M/G Transport,* 173 F.3d at 589:

> Instead, we are called upon to determine merely whether, after viewing the evidence in the light most favorable to the prosecution, *and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony,* any rational trier of fact could find the elements of the crime beyond a reasonable doubt.

■ "The essential elements of a drug conspiracy are 1) an agreement to violate the drug laws, and 2) each conspirator's knowledge of, intent to join, and participation in the conspiracy." *United States v. Crozier,* 259 F.3d 503, 517 (6th Cir.2001). Douthit argues that "[m]ere association with conspirators is not enough to establish participation in a conspiracy." *United States v. Pearce,* 912 F.2d 159, 162 (6th Cir.1990) (internal citations omitted). Although a defendant's presence may be unexplained, argues Douthit, it does not follow that his presence "without more, [was] sufficient to support a conspiracy charge. In most instances, this court requires firm evidence of at least tacit coordination among conspirators in affirming conspiracy convictions." *Id.*

The United States argues that it has presented evidence of far more than a tacit agreement between Douthit and Palmer. Palmer's trial testimony presented evidence of an ongoing arrangement between the men to travel together to New York for the purposes of procuring drugs and bringing them back to Cincinnati. A second witness for the United States, another drug user. testified that she would go to Palmer's and Palmer would arrange for Douthit to come supply the two of them with drugs. When viewed in the light most favorable to the United States, we find that this evidence is sufficient for the jury to have reasonably concluded that Douthit was guilty.

■ Douthit also argues that the evidence was insufficient to convict him of the possession charge because Douthit did not actually or constructively possess the drugs. "A violation of 21 U.S.C. § 841(a), possession with intent to distribute, requires: (1) knowingly or intentionally, (2) possessing, (3) with the intent to distribute, (4) a controlled substance." *United States v. Monger,* 185 F.3d 574, 577 n. 2 (6th Cir.1999). Douthit argues that only Palmer *actually* possessed the drugs in question so the United States must prove Douthit had *constructive* possession in or-

der to succeed in this charge. This court elucidated the distinction between actual and constructive possession in *Napier v. United States,* 159 F.3d 956, 958 (6th Cir. 1998):

> The law recognizes two kinds of possession—actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession. A person who, although not in actual possession knowingly has both the power and intention, at a given time, to exercise dominion and control over a thing, either directly or through another person or persons, is then in constructive possession of it.

Based on the facts presented by Palmer's testimony, the United States argues it provided ample evidence of constructive possession of the drugs on Douthit's part. We agree.

Douthit also makes a series of points with regard to Palmer's credibility and the inconsistencies in Palmer's testimony. He argues that this court has long recognized that statements by a co-conspirator after arrest are inherently untrustworthy, citing *United States v. Gomez–Lemos,* 939 F.2d 326, 329–30 (6th Cir.1991). *Gomez–Lemos's* long discussion of co-conspirator's statements, however, regards those proffered without the benefit of cross-examination. Palmer was available for cross-examination, and we will not substitute our judgment of the credibility of a witness for that of a jury.

■ In his next attack on the sufficiency of the evidence supporting his convictions, however, Douthit presents a viable argument. Douthit argues that his conviction on the conspiracy charge must be vacated because the United States put forth no evidence as to any cocaine possessed or distributed by Douthit. Because Count One of the indictment charges a conspiracy to possess with intent to distribute more than five hundred grams of cocaine *and* more than fifty grams of cocaine base, Douthit reasons, the indictment and conviction are flawed.

This court asked a variant of this question in *United States v. Dale,* 178 F.3d 429, 431–32 (6th Cir.1999): "Is a single count of an indictment duplicitous and therefore the source of reversible error when it charges a conspiracy to distribute two different controlled substances?" *Dale* went on to say:

> It has been clear since *Braverman v. United States,* 317 U.S. 49, 54, 63 S.Ct. 99, 87 L.Ed. 23 (1942), that the allegation, in a single count of conspiracy, of an agreement to commit several crimes is not duplicitous, as conspiracy is itself the crime. *See also United States v. Solimine,* 536 F.2d 703, 711 n. 31 (6th Cir.1976). A single conspiracy may have as its objective the distribution of two different drugs without rendering it duplicitous. *See, e.g., United States v. Clark,* 67 F.3d 1154, 1160 (5th Cir.1995).

While this appears to answer Douthit's charge, there is a distinction to be drawn. In *Dale,* "Evidence was presented which supported the distribution of both drugs." *Id.* In this case, in contrast, the United States charged Douthit with conspiracy to distribute cocaine and cocaine base, but the United States presented no evidence on cocaine.

This court asked the *Dale* question in *United States v. Campbell,* 279 F.3d 392, 398 (2002), but made no comment as to whether evidence was presented on each of the drugs charged in the conspiracy. The only other cases from this court dealing with this question are not published opinions.[1] For that reason, we look to other courts for assistance.

---

1. For a conviction on a conspiracy charge, held one panel, "All that is needed is the

The Third Circuit has held that "[u]nder *Apprendi*, drug identity must be treated as an element only when it results in a sentence beyond the relevant statutory maximum," leaving open the possibility that the identity of the drug could be determinative. *United States v. Barbosa*, 271 F.3d 438, 457 (3d Cir.2001). The Court of Appeals for the Tenth Circuit, going a step further, said, "Because the object of a conspiracy is an element of the offense, the Fifth and Sixth Amendments require a jury to determine all facts necessary to establish the existence of the object of the conspiracy, and the government must prove it beyond a reasonable doubt." *United States v. Bush*, 70 F.3d 557, 561 (10th Cir.1995).

Finally, in vacating the sentences of defendants who claimed that their indictment was flawed, the Eleventh Circuit, in *United States v. Allen*, 302 F.3d 1260, 1275 (11th Cir.2002), said:

> At no time was the jury advised, either in the court's instructions or in the Government's argument to the jury, that before a charged Defendant could be found guilty of the conspiracy count, it must find that that Defendant had agreed to participate with both cocaine and marijuana. Nor did the court instruct or the parties argue to the jury that a failure of proof as to either controlled substance, be it cocaine or marijuana, would require an acquittal on Count 1.

Nevertheless, the Fourth Circuit, in an unpublished opinion, has differed from the analysis of these other courts. That court said, in a different *United States v. Allen*,

Nos. 99–5444, 99–5459, 1999 WL 515413, at *4 (4th Cir. Jul. 21, 1999):

> Conspiracy under § 846 does not proscribe the possession or distribution of particular drugs by itself but rather must be charged in conjunction with another statutory provision, in this case, § 841(b)(1)(A). Section 841(b)(1)(A) proscribes "cocaine, its salts, optical and geometric isomers, and salts of isomers." It is undisputed that § 841 criminalizes both powder and crack cocaine. Conspiracy under §§ 841(b)(1)(A) and 846 only requires proof of some controlled substance under § 841 and not proof of a particular substance for purposes of liability.

As the conflict among these cases makes clear, Douthit raises a complex question.

"To obtain a reversal due to a variance between the indictment and the evidence, [a defendant] must show 1) the variance itself, and 2) an effect on a substantial right." *United States v. Crozier* 259 F.3d 503, 519 (6th Cir.2001) (citing *United States v. Kelley*, 849 F.2d 999, 1002 (6th Cir.1988)). While Douthit has unquestionably shown a variance between the evidence presented and the crime charged in the indictment, he still must show that this variance affects a substantial right. The Seventh Circuit has held that a conviction will not be overturned where the proof at trial covers fewer offenses than the indictment charged unless the change surprised or prejudiced the actual defense. *See United States v. Leichtnam*, 948 F.2d 370, 376 (7th Cir.1991). *See also United States v. Morgenstern*, 933 F.2d 1108, 1115 (2d Cir.1991); *United States v. Wright*, 932 F.2d 868, 874 (10th Cir.1991).

---

criminal agreement itself." *United States v. Miller*, No. 96–2532, 1998 WL 246150, *3 (6th Cir. May 7, 1998). Before another panel, an appellant claimed that the nature of a controlled substance must be determined by the jury because that nature dictates the sentence

involved. *United States v. Cooper*, No. 00–3681, 2002 WL 1033724, *7 (6th Cir. May 21, 2002). The panel held that the nature of the substance involved was adequately submitted because of a limiting jury instruction.

Because the proof at trial only supported a conviction for conspiracy to distribute cocaine base, and not cocaine base and cocaine, and because we do not believe that the variance affected a substantial right of Douthit's, we remand the case with instructions to the district court that the five hundred grams of cocaine be stricken from the indictment and that Douthit be resentenced on the conspiracy to distribute solely cocaine base.

We turn now from arguments about the sufficiency of the evidence to Douthit's second basis for attack. As to his evidentiary objections, this court reviews the district court's determinations for abuse of discretion. *See United States v. Copeland*, 321 F.3d 582, 595–96 (6th Cir.2003). The United States points out, however, that "This usual standard of review, however, is superseded when … the complaining party failed to object to the evidence in the district court. Our review under these circumstances is for plain error." *United States v. Cowart*, 90 F.3d 154, 157 (6th Cir.1996). The United States correctly notes that the plain error standard requires "(1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (internal citations omitted).

Douthit makes numerous objections to the evidence presented and admitted against him. He has several claims surrounding the improper admission of bad acts evidence, and he has several claims regarding the improper admission of hearsay evidence against him. Without taking every argument in turn, we find that the district court neither abused its discretion nor made a plain error as to these questions.

Douthit's final claim arises from a question of ineffective assistance of counsel. This court "generally will not rule on ineffective assistance of counsel claims raised for the first time on direct appeal." *United States v. Garcia–Meza*, 315 F.3d 683, 687 (6th Cir.2003) (citing *United States v. Hall*, 200 F.3d 962, 965 (6th Cir.2000)). *See also United States v. Daniel*, 956 F.2d 540, 543 (6th Cir.1992); and *United States v. Pruitt, et al.*, 156 F.3d 638, 646 (6th Cir.1998). "Claims of ineffective assistance of counsel usually must be addressed first by the district court pursuant to a motion under 28 U.S.C. § 2255." *Hall*, 200 F.3d at 965. We will not consider this claim for the first time in this forum.

For the foregoing reasons, we AFFIRM in part, and we REVERSE and REMAND in part to the district court for resentencing.