**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0386n.06
Filed: June 12, 2007

**No. 06-1457**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| EVERETT VINSON, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| BARRY MCLEMORE, Warden, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |

Before: MARTIN and SUTTON, Circuit Judges; and GRAHAM, District Judge.[*]

SUTTON, Circuit Judge. Everett Vinson appeals the denial of his habeas corpus petition. Because his state-appointed attorney was not constitutionally ineffective in representing Vinson at trial, we affirm.

I.

On the night of November 24, 1995, Sheila Evans threw a birthday party for herself, after which she, her then-boyfriend Artie Embry and her previous boyfriend Everett Vinson repaired to her house for a "drink." JA 89. Evans and Embry fell asleep on a couch, while Vinson retired upstairs. Early in the morning of November 25, Evans was awakened by the sound of Vinson

_____

[*] The Honorable James L. Graham, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

coming down the stairs. Wielding a butcher's knife, Vinson stabbed Embry several times. Evans screamed; her son woke up, came into the room and grabbed Vinson's arm. As the two wrestled for the knife, Vinson cut his own left hand and his right cheek and dropped the knife. The two were still struggling when the Michigan state police arrived 20 minutes later.

The State charged Vinson with assault with intent to commit murder, Mich. Comp. Laws § 750.83, and with several lesser included offenses. In preparation for trial, Vinson and his state-appointed counsel, Theodore Hentchel, discussed Vinson's "hospital record at the VA hospital, [the] defense to use, . . . and trying to get a . . . plea." JA 115. The two discussed the "possible defense" of intoxication, but Hentchel advised that "intoxication and also diminished capacity" were not "good defense[s]." JA 116. Indeed, in his 17 years of practice, Hentchel had "never used alcohol" as a defense because "[j]urors do not like that. . . . Voluntary intoxication does not work." JA 186–87. Instead, Hentchel decided to argue that Vinson had acted in self-defense, relying on "the wound . . . on [Vinson's] hand" as corroborating evidence. JA 115.

In May 1996, Vinson's first trial ended with a hung jury. The jury foreperson explained that one of the jurors refused to deliberate, but that the rest were ready to convict Vinson of assault with intent to do great bodily harm, Mich. Comp. Laws § 750.84, a lesser included offense.

Vinson's second trial was held in August. On the morning of the second trial, the prosecutor said he would accept a plea to the lesser charge of assault with intent to do great bodily harm. Although Hentchel asked for "something better," "since the first jury was already ready to give that

to us," the prosecutor refused to accept anything less than "the 10-year charge" (*i.e.*, assault with intent to do great bodily harm). JA 160. When Hentchel brought the offer to his client, Vinson turned it down. On August 9, the jury convicted Vinson of assault with intent to commit murder, and the judge sentenced him to 15–25 years in prison.

In his state court direct appeal, Vinson argued (among other things) that Hentchel was constitutionally ineffective in not raising defenses of intoxication and diminished capacity at trial and in advising Vinson about the plea offer. He also asked for an evidentiary hearing, which the Michigan Court of Appeals denied. *People v. Vinson*, No. 198432 (Mich. Ct. App. Dec. 2, 1997). In reviewing Vinson's claims on the merits, the Michigan Court of Appeals found that Hentchel had not "erred" in choosing this trial strategy and that Vinson waived his plea-bargain argument because he had not asked for an evidentiary hearing on the matter. *People v. Vinson*, No. 198432, 1998 WL 1990004, at *2 (Mich. Ct. App. Sept. 4, 1998). The Michigan Supreme Court denied Vinson leave to appeal this decision. *People v. Vinson*, No. 113326 (Mich. May 25, 1999).

After exhausting his state post-conviction remedies, Vinson petitioned for federal habeas corpus relief. Noting that Vinson never had an opportunity to present evidence on his ineffective assistance of counsel claim, the district court held an evidentiary hearing. Vinson testified that he rejected the State's plea bargain because he thought he had been acquitted of assault with intent to commit murder at his first trial. Although Hentchel could not recall Vinson's case precisely, he said that he would have "urge[d] [his] client" to take a plea in Vinson's circumstances. JA 182. The district court denied the petition, *Vinson v. McLemore*, No. 01-10290-BC, 2006 WL 381663, at *6

(E.D. Mich. Feb. 17, 2006), but granted Vinson a certificate of appealability on his ineffective-assistance-of-counsel claims.

II.

In reviewing the denial of Vinson's habeas petition, we give fresh review to the district court's legal conclusions and defer to any factual findings stemming from the evidentiary hearing unless they are clearly erroneous. *See Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998). Vinson is "in custody pursuant to the judgment of a State court," requiring us to defer to the factual findings of the state courts absent "clear and convincing evidence" to the contrary, 28 U.S.C. § 2254(e)(1), and restraining us from granting the petition "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," *id.* § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 413 (2000). When a state court has not resolved a claim on the merits (because, say, it mistakenly thought the claim was waived), we must decide for ourselves as a de novo matter whether the inmate is in custody "in violation of the Constitution . . . of the United States," 22 U.S.C. § 2254(a).

A.

Vinson submits that Hentchel was constitutionally ineffective in advising him to reject the State's plea-bargain offer. To prevail, Vinson must show that Hentchel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment,"

*Strickland v. Washington*, 466 U.S. 668, 687 (1984), and that, but for this inadequate assistance, Vinson "would have pleaded . . . guilty and [not] insisted on going to trial," *Hill v. Lockhart*, 474 U.S. 52, 60 (1985). Heightened AEDPA review does not apply to this claim because the state courts never reviewed it on the merits. They instead thought that Vinson had waived the claim because he "did not move for . . . an evidentiary hearing," *Vinson*, 1998 WL 1990004, at *2, which turns out not to be true, *see Vinson*, No. 198432 (Mich. Ct. App. Dec. 2, 1997) (denying Vinson's request for an evidentiary hearing).

The key problem with Vinson's claim is that he has not established the factual predicate for bringing it. He has not shown that Hentchel ever told Vinson that the first (hung) jury acquitted him of assault with intent to commit murder. Vinson has shown only that *he* thought he had been acquitted, and even then he has not given a good explanation for why he reached that conclusion after the first jury's decision in open court, why he still held that opinion at the time of the plea-bargain offer and why he still held that opinion after the prosecutor's opening argument in the second trial specifically addressed Vinson's "intent to murder" Embry. *See* JA 120, 125, 456–57; Trial Tr. at 13. While Hentchel could not remember exactly what he told Vinson after the initial jury decision, he did explain at the evidentiary hearing what he normally would have told a client under these circumstances based on his 17 years of criminal-trial experience. Hentchel (not surprisingly) understood that a hung jury does not mean acquittal but instead means that "[y]ou start all over." JA 181. And if Vinson had suggested that he had been acquitted, Hentchel explained that he "would have told him he was dead wrong." JA 188. He also explained that he "would urge [his] client" to

take the plea in a case like Vinson's. JA 182. In crediting Hentchel's testimony over Vinson's testimony on this critical factual point, *see* D. Ct. Op. at 10, the district court did not make a clear error. In the absence of this factual predicate, this ineffective-assistance claim must be rejected.

B.

Vinson also complains that Hentchel did not sufficiently investigate and ultimately pursue two defenses: voluntary intoxication and diminished capacity. While Hentchel considered these defenses in the abstract (and did not investigate them), his strategic choice to rely on self-defense as Vinson's only theory of acquittal is "reasonable" so long as his "reasonable professional judgment[] support[s] the limitations on investigation." *Strickland*, 466 U.S. at 691.

The state court did not "unreasonably" apply this tenet of *Strickland* for three reasons. *First*, Hentchel's decision to stick solely with a theory of self-defense was legitimately and reasonably strategic. As Hentchel explained at the evidentiary hearing: he "never used alcohol" as a defense, JA 186; he had "never known of it being successful," *id.*; he had "never known of any attorney" in his county "using a successful alcohol" defense, JA 186–87; and he thought "[j]urors do not like" the argument that "I was too drunk to know what I was doing," JA 187. *See also* JA 187 ("Q. . . . [W]ould it be fair to say that if you did not raise the defense of diminished capacity, that that was part of your trial strategy in this case?" "A. Yeah."); JA 116 (Hentchel said that "diminished capacity . . . wasn't a good defense.").

*Second*, Hentchel's reasonable decision not to investigate alternative defenses had ample information to support it—he made the choice *after* Hentchel had heard all of the witnesses at the first trial and after Vinson had discussed his past alcohol abuse and counseling several times with Hentchel. At that point, Hentchel knew of Vinson's history, knew that there was no evidence (other than Vinson's statement) that he was too intoxicated to realize what he was doing several hours after he had stopped drinking and knew that Hentchel was competent enough to write letters to the state-court judge and prosecutor complaining of Hentchel's lack of communication, *see* JA 454, 456. While a qualified mental health expert may be necessary to look at this issue sometimes, *see Dando v. Yukins*, 461 F.3d 791, 798–99 (6th Cir. 2006) (holding that an attorney presented with a viable defense of Battered Women's Syndrome may need to hire a mental health expert before rejecting that defense), no expert was needed here when the facts and law known to Hentchel reasonably showed that neither voluntary intoxication nor diminished capacity had reasonable prospects for success.

*Third*, Hentchel had good reason to think that self-defense was Vinson's best option. Physical evidence corroborated the theory (Vinson's wounded hand), and twelve jurors had been ready to acquit Vinson of assault with intent to commit murder based on that defense. Had Hentchel altered his theory or added a theory, the State surely would have introduced Vinson's "statement to police that he stabbed the victim in self defense" to discredit him. JA 93.

III.

For these reasons, we affirm.